**Herbert John MANDERSCHEID, Sr., Appellant,**

v.

**Arvid BEYER, d.b.a. Arvid Beyer Ford & Chrysler, Respondent.**

**No. C0–87–457.**

Court of Appeals of Minnesota.

Oct. 6, 1987.

John E. Mack, New London, for appellant.

Gerald J. Seibel, Morris, for respondent.

Heard, considered and decided by LANSING, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

This appeal is from a judgment entered against appellant Herbert Manderscheid following trial to the court of his action for discriminatory discharge from employment. Appeal is also made from an order denying appellant's motion for a new trial or amended findings. We affirm.

## FACTS

Appellant Herbert Manderscheid was employed for 27 years at the Ford dealership in Morris. Manderscheid was the parts manager through several changes in ownership. In 1980, respondent Arvid Beyer bought the dealership and retained former employees, including Manderscheid. He added the truck dealership he previously owned and added the Chrysler line of automobiles. Beyer hired a person who was experienced with Chrysler parts to assist Manderscheid.

As appellant's parts manager, Manderscheid was responsible for ordering parts for the service department and for customers, keeping track of inventory, and returning parts to the manufacturer for credit. The number of mechanics Manderscheid supplied with parts increased from six or seven in 1980 to 14 or 16 in 1982. Manderscheid used a manual card system to control inventory, but testified he was getting too busy to keep it up and began to rely on memory.

Appellant has arthritis, and went to the Veteran's Administration for monthly treatments, requiring him to take a day off from work. Manderscheid also took two weeks off in 1980 to go to Mexico for treatment.

Appellant was terminated from his employment in July 1983. He testified Beyer told him he was letting him go because he was "kind of sickly." Beyer testified he did not recall saying that, or giving Manderscheid any reason for the termination.

In his claim for unemployment, Manderscheid reported that "[Beyer] said that he was making some changes and cutting back on some help." In response to the claim, Beyer reported he had "hired another guy I thought would be a little faster." Beyer testified he discharged Manderscheid because of dissatisfaction with his job per-

formance, and because he wanted to cut back to a one-person parts department. He stated that the parts department was not doing well, had extensive obsolete inventory, and received complaints from customers and mechanics.

Beyer presented the testimony of a service department employee that there were frequent complaints about Manderscheid's work. Beyer's brother, who had been a customer of the parts department, testified he switched his business to another dealer because of Manderschied's poor performance. A former service manager also testified there had been complaints from mechanics about Manderscheid's slowness in ordering parts.

Manderscheid presented the testimony of Mike Rosdahl, a parts supplier, that Beyer had told him Manderscheid had been sick a lot and "he needed someone there more permanently." Beyer did not tell him he was thinking of discharging Manderscheid, although Rosdahl was applying for a job with Beyer himself.

Manderscheid also presented the testimony of the former owner of the dealership that Manderscheid "would rate * * * about the same as any other parts manager" in performance.

Beyer rehired Manderscheid in September 1983, after his replacement had left. Beyer testified he only intended to keep appellant until he found another person. Manderscheid was discharged again in December, 1983, for what Beyer characterized as the same reasons as before. Manderscheid testified Beyer told him he was firing him because of Manderscheid's imminent divorce. Beyer denied this, and testified he gave no reason for the second dismissal. On appeal, Manderscheid does not argue the allegedly discriminatory nature of this second dismissal.

The trial court found that Manderscheid's arthritis did not prevent him from performing the essential duties of his job. The court found Manderscheid had problems controlling inventory and had complaints from customers and mechanics. The court found he was not discharged because of his physical condition or his marital status.

## ISSUE

Did the trial court err in concluding Manderscheid had not been discharged due to disability?

## ANALYSIS

Manderscheid contends the evidence does not support the trial court's finding there was no discriminatory discharge. This court must view the evidence in the light most favorable to the trial court's findings and defer to the court's opportunity to judge the credibility of the witnesses. *Tonka Tours, Inc. v. Chadima,* 372 N.W.2d 723, 726 (Minn.1985).

The trial court made the following finding:

2. Plaintiff, 61 years old, has arthritis. It does not prevent the plaintiff from performing the essential duties of a parts manager in an automobile business.

The court noted the increase in the number of mechanics Manderscheid was required to keep supplied with parts, and found:

8. Plaintiff did not have an effective inventory control system when he was parts manager, and consequently obsolete parts accumulated. Also while plaintiff was managing the parts department, problems with the service department and customers were common, causing delays in the parts department and these problems have been largely eliminated since the plaintiff's termination.

The court found Manderscheid was not discharged because of his physical condition.[1]

1. The trial court made no determination whether Manderscheid's arthritis was a "disability," Minn.Stat. § 363.01, subd. 25 (1986), thus making Manderscheid a member of a protected class. Because a legitimate non-discriminatory reason for the discharge was shown, we do not address this issue. *See Brookshaw v. South St. Paul Feed, Inc.,* 381 N.W.2d 33, 36 (Minn.Ct.App. 1986), *pet. for rev. denied* (Minn. April 11, 1986) (regardless of whether ulcers or mental stress were a disability, plaintiff was discharged for other reason).

 Beyer's claim that Manderscheid's job performance was unsatisfactory is supported by testimony from other employees. Manderscheid admitted he was trying to keep track of inventory in his head, although he claimed he was forced to do so through lack of help.

There is no evidence Manderscheid's arthritis affected his job performance. Manderscheid himself testified it did not limit his ability to do his job. If there is no evidence a claimed disability affects the employee's job performance, terminating the employee for poor job performance, adequately established on the record, is not discriminatory.

The evidence amply supported the court's finding that problems with obsolete inventory and delays in ordering parts occurred. The court's findings that Manderscheid was discharged due to these problems, and that they were not caused by his arthritis, are amply supported.

 Manderscheid argues on appeal that Beyer had a duty to make accommodations for his physical condition. *See* Minn.Stat. § 363.03, subd. 1(6) (1986) (employer with over 50 employees must make "reasonable accommodation" to known employee disabilities). This argument would apply, however, only if Beyer was firing him for poor job performance, *and* there was a disability affecting his performance.

The trial court, which did not determine whether arthritis was a disability placing Manderscheid in a protected class, did not follow the three-part *McDonnell Douglas* analysis required in *Sigurdson v. Isanti County*, 386 N.W.2d 715, 721–22 (Minn. 1986). The supreme court stated, however, that the trial court is not required to "rigidly and mechanically apply" the analysis of prima facie case, answer and rebuttal. *Id.* at 721.

This court in *Schlemmer v. Farmers Union Central Exchange, Inc.*, 397 N.W.2d 903, 907–08 (Minn.App.1986), held sufficient trial court findings which applied the *McDonnell Douglas* test but did not detail the insufficiency of the employees' prima facie showing. This court found the record sufficient to show three of the em-

ployees were not qualified for the jobs, and the job of the fourth was eliminated. *Id.* Here, even if a prima facie case had been made, Manderscheid was not entitled to recover. Beyer established despite Manderscheid's attempted rebuttal that the discharge was due to poor job performance, a legitimate, non-discriminatory reason.

## DECISION

The trial court did not err in concluding Manderscheid was not dismissed due to his arthritis.

Affirmed.