Virginia L. **HAUGE**, Appellant,

v.

**COUNTRY CLUB MARKET,**
**INC., Respondent.**

No. C3–85–397.

Court of Appeals of Minnesota.

Sept. 17, 1985.

Thomas Blackmar, Burnsville, for appellant.

Michael R. Cunningham, Susan L. Segal, Minneapolis, for respondent.

Heard, considered and decided by CRIPPEN, P.J., SEDGWICK, and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellant Virginia L. Hauge commenced an action against respondent Country Club Market, Inc., alleging discrimination on the basis of age under the Minnesota Human Rights Act. The trial court concluded Country Club's decision to terminate Hauge was not motivated by age and therefore the Human Rights Act was not violated. We affirm.

## FACTS

In May 1981 Penny's, a grocery supermarket chain, sold its Sioux Trail store, at which Virginia Hauge and Lori Ueker were full-time cashiers, to Country Club Market, Inc. All employees of the Sioux Trail store were terminated by Penny's at the time of sale and Country Club rehired the employees for a 30 day probationary period.

The Sioux Trail store re-opened as a Country Club Market. Country Club had a history of staffing its stores with one full-time cashier.

Hauge's duties included operating a cash register and doing the "bookwork" for the store. The bookwork took approximately two hours each morning and involved balancing the cash drawers for the cash registers and preparing deposits. Ueker's duties included supervising the store's bakery, operating a cash register and doing the bookwork for the bakery.

Robert Nelson, supervisor for seven other Country Club stores, was assigned as supervisor of the new store. Thomas

Schuller, a supervisor in another store, temporarily, and on a full-time basis, assisted Nelson in establishing the new store. Nelson also asked Doris Enlund, a full-time cashier from another store, to assist the training of the cashiers. Because Country Club concluded the Sioux Trail store under Penny's management was overstaffed with full-time employees, Nelson knew at the time of opening the Club store that one of the two full-time cashiers would have to be terminated. The decision to terminate Hauge was made by Nelson, in consultation with Schuller, several days after the re-opening of the store.

The trial court held Nelson's decision (1) was based upon the opinion that Lori Ueker was the better employee because she exhibited a greater degree of interest, initiative and effort in her job performance and (2) was not motivated by any fact other than a good faith decision to retain the more qualified of the two cashiers.

## ISSUE

Were the trial court's findings reasonably supported by the evidence?

## ANALYSIS

Hauge argues the trial court's findings are not supported by the evidence and that the trial court committed reversible error when it referred to Hauge and Ueker as "head cashiers" in its findings of fact. Hauge appeals only from the judgment.

On review, this court must determine whether the trial court's findings are clearly erroneous. *See* Minn.R.Civ.P. 52.01. Under this standard, the court's findings in support of its determination that Hauge failed to prove her allegations of discrimination will not be set aside "if they are reasonably supported by evidence in the record considered as a whole." *Hubbard v. United Press International, Inc.*, 330 N.W.2d 428, 441 (Minn.1983). Due regard should be given to the opportunity of the trial court to judge the credibility of the witnesses. *Dufrane v. Commissioner of Public Safety*, 353 N.W.2d 705, 707 (Minn. Ct.App.1984).

In *Hubbard,* the Minnesota Supreme Court adopted a three-part analysis in discrimination cases. *Hubbard,* 330 N.W.2d at 441, (citing *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). First, the former employee must make a prima facie showing of age discrimination. A prima facie case is established by showing:

(1) he is a member of a protected class; (2) he was qualified for the job from which he was discharged; (3) he was discharged; and (4) the employer assigned a nonmember of the protected class to do the same work.

*Hubbard,* 330 N.W.2d at 442. Second, the employer must establish legitimate, nondiscriminatory reasons for the challenged action. *Id.* The third stage, the discharged employee's rebuttal, requires the showing that the reasons stated are a mere pretext for discrimination. *Id.* at 443.

The trial court did not specifically adopt this three-part analysis in its findings. Instead, the court focused on whether Country Club established legitimate, nondiscriminatory reasons for terminating Hauge and whether these reasons were pretextual.

The evidence showed that Hauge did not meet Country Club's "expectations." She lacked initiative in finding work and on occasions did not keep herself busy or occupied. Nelson, as well as Schuller, observed Hauge standing around at a time when there was a lot of work that needed to be done during the changeover, an observation confirmed by John Willenburg, an assistant store manager at Penny's of Hauge's conduct while employed by Penny's. Nelson also noted Hauge would not look for work.

On the other hand, Nelson observed that Ueker was a very "aggressive" and "hard" worker at her new position and while at Penny's, was never reprimanded, had a good work performance and operated the register well. Schuller concurred in the decision to terminate Hauge.

Hauge argues these reasons are a mere pretext because Dennis Otto, Penny's store

manager, was not consulted. Otto was, in essence, a stranger to the policies and procedures adopted by Country Club because he too was hired by Country Club on a trial basis. Despite that, Nelson did ask Otto questions about both Ueker's and Hauge's job performance. Otto, while expressing no preference, did testify that Hauge was "stubborn."

Hauge claims discriminatory intent implied in an alleged reference of Nelson to Hauge as one of "those two old bags." The reference is without significance when considered with all the other evidence, including testimony that Country Club would not have reduced salaries and benefits by retaining Ueker over Hauge.

■ The evidence supports the trial court's findings that Country Club's actions were motivated by nondiscriminatory reasons.

■ Finally, Hauge claims the trial court committed reversible error when it referred to both Hauge and Ueker as "head" cashiers. We disagree. The collective bargaining agreement defines "head cashier" as a full-time cashier who does bookwork. The mistake is inconsequential at best. Ueker does the "bookwork" for the bakery and so, in a sense, each is a head cashier.

### DECISION

The record contains ample evidence that Country Club had legitimate, nondiscriminatory reasons for terminating Hauge rather than Ueker. Hauge's efforts to show pretext are unpersuasive.

Affirmed.