Carol **WARD**, Appellant,

v.

**EMPLOYEE DEVELOPMENT CORPORATION, et al.,**
**Respondents.**

No. C3–93–2311.

Court of Appeals of Minnesota.

May 17, 1994.

Review Denied July 8, 1994.

200

Kelley V. Rea, Law Offices of Legal and Security Services, Minneapolis, for appellant.

Shirley Okrent Lerner, Jennifer Ball Mohlenhoff, Meagher & Geer, Minneapolis, for respondents.

Considered and decided by SCHUMACHER, P.J., and LANSING and RANDALL, JJ.

## OPINION

LANSING, Judge.

A discharged employee appeals a summary judgment against her claims for breach of an employment contract and discriminatory termination. We agree with the district court's holding that the employee failed to produce sufficient facts to create triable issues, and we affirm.

## FACTS

Carol Ward worked initially as a secretary and then as officer manager for Employee Development Corporation (EDC). EDC is a private company providing vocational rehabilitation services to injured and disabled persons. Ward was forty-eight when she was hired and within one year she was promoted to manage EDC's small staff of secretaries who were in their twenties. In general, Ward received positive performance reviews. Ward was discharged after two years of employment for "violating company policy" when she met an EDC client after business hours for a drink. At the time of discharge Ward was fifty years old.

Ward's supervisor, Frank Lamp, questioned Ward about whether she had "dated" a client. When Ward admitted meeting the client socially, Lamp told Ward her conduct was a serious ethical breach and gave her the choice of resigning or being discharged. Ward refused to resign, and Lamp gave her a memo that stated that she was being terminated for violating company policy, citing the following rule from the company's employee handbook:

Article 4: Discipline and Discharge, SECTION 2: WORK BEHAVIOR/ATTITUDE, Any employee who, in the course of their employment performs any act which is determined detrimental to the ethical and/or quality standards established by EDC shall be dismissed immediately.

The memo also stated that Ward's conduct violated a neutrality policy, which ensured EDC was neutral in its dealings with its various clients.

Ward received a copy of the *Laws, Rules and Regulations* as an EDC employee. The handbook did not describe a neutrality policy, and Ward asserted that such a policy had never been communicated to her. Lamp contended it was generally understood, due to the nature of the business, that employees could not date clients.

Lamp and EDC moved for summary judgment on Ward's claims for age discrimination, breach of contract, and defamation. Ward did not contest the dismissal of the defamation claim. The district court concluded that Ward failed to present evidence that EDC's employment handbook altered Ward's employment status or that EDC violated the handbook's terms. The court further concluded that the evidence supporting Ward's age discrimination claim was insufficient to withstand summary judgment.

## ANALYSIS

### I

■ Ward's claim for disparate treatment age discrimination is based on the Minnesota Human Rights Act, Minn.Stat. § 363.03, subd. 1(2) (1992). Minnesota permits claimants to prove discriminatory intent by circumstantial evidence according to a three-part analysis adopted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807, 93 S.Ct. 1817, 1826–27, 36 L.Ed.2d 668 (1973). *See Sigurdson v. Isanti County*, 386 N.W.2d 715, 719–20 (Minn.1986) (*McDonnell Douglas* analysis allows *prima facie* case to be proved by indirect elements when direct evidence is not available).

The *McDonnell Douglas* tripartite framework of evidentiary burdens begins with the plaintiff's burden of proving facts sufficient to show a *prima facie* case of discrimination. In a discriminatory discharge case, a *prima facie* case requires proof that the claimant (1) is a member of the protected class; (2) was qualified for the position from which the claimant was discharged; and (3) was replaced by a nonmember of the protected class. *Feges v. Perkins Restaurants*, 483 N.W.2d 701, 711 (Minn.1992).

■ This traditional construction for a *prima facie* case in a discriminatory discharge action does not fit age discrimination claims brought under the Minnesota Human Rights Act because the protected class includes anyone over the age of majority. *See* Minn.Stat. § 363.01, subd. 3 (1992). Consequently, a strict application of the formulation would mean that a *prima facie* case for an age discriminatory discharge could only be established if the replacement employee was under the age of eighteen. Such an application is not reasonable.[1]

In adopting the *McDonnell Douglas* formulation for discrimination claims, the Minnesota Supreme Court stated that the *prima facie* elements vary from case to case and in different factual circumstances. *Danz*

*v. Jones*, 263 N.W.2d 395, 399 (Minn.1978). Different categories of discrimination, varying factual patterns, and individual employment contexts may require modification of the elements from which discriminatory motive can be inferred. *See McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13; *Sigurdson*, 386 N.W.2d at 720; *Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1269–70 (8th Cir.1987), *cert. denied*, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987).

■ To establish a *prima facie* case of disparate treatment age discrimination, Ward's proof should reasonably include facts to show that: (1) she was a member of a protected class; (2) she was qualified for the position she held; (3) despite her qualifications, her employment was terminated; (4) a younger person was assigned to do her work. These factors incorporate the elements Minnesota courts have generally used to decide age discrimination cases. *See, e.g., Feges*, 483 N.W.2d at 711; *Albertson v. FMC Corp.*, 437 N.W.2d 113, 116 (Minn.App.1989). These factors also correspond with factors used by other states when the protected class consists of individuals over the age of majority. *See, e.g., Featherly v. Teledyne Indus.*, 194 Mich.App. 352, 486 N.W.2d 361, 364 (1992); *O'Connor v. Frawley*, 175 A.D.2d 781, 573 N.Y.S.2d 675, 676 (App.Div.1991); *cf. Jacques v. Akzo Int'l Salt*, 422 Pa.Super. 419, 619 A.2d 748, 751 (1993) (requiring replacement employee to be significantly younger than discharged employee).

■ Ward made out a *prima facie* case of age discrimination by indirect proof: she was a member of the protected class; she was qualified to perform her duties as office manager, but fired despite that fact; and she was replaced by an employee approximately thirty years younger. We reject EDC's claim that Ward failed to satisfy the qualifications prong of the test by exercising poor judgment in dating a client. The qualifications prong generally relates to vocational skills and ability to perform the job's functions.

---

1. Cases brought under the federal Age Discrimination in Employment Act typically have applied the traditional elements for a *prima facie* case of discrimination. *See, e.g., Johnson v. Group Health Plan*, 994 F.2d 543, 545–46 (8th Cir. 1993). Unlike the Minnesota Human Rights Act definition of a protected class for age discrimination, however, a protected class under the federal law includes individuals at least forty years of age. 29 U.S.C. § 631 (Supp. IV 1992).

*See Rutherford v. County of Kandiyohi*, 449 N.W.2d 457, 462 (Minn.App.1989) (noting fact that plaintiff was hired and retained for several years showed he had basic job qualifications), *pet. for rev. denied* (Minn. Feb. 28, 1990).

■ Once Ward established a *prima facie* case of age discrimination, the burden shifted to EDC to state a legitimate, nondiscriminatory basis for Ward's discharge. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If EDC meets this burden of production, the presumption raised by Ward's *prima facie* case is rebutted. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). EDC's reason must only be one that, *"taken as true, would permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993).

■ These evidentiary burdens are generally burdens to be met at trial. In some limited situations, however, when facts are not at issue, the evidence supporting the evidentiary burdens may be evaluated to determine whether triable issues exist. EDC cites Ward's social meeting with an EDC client as a legitimate reason for terminating Ward's employment, stating that Ward's action was in violation of a generally understood company policy. *See Johnson*, 994 F.2d at 547 (breach of company policy is legitimate reason for terminating person's employment). EDC's reason is one that, taken as true, permits the conclusion that there was a nondiscriminatory reason for Ward's discharge. Ward does not dispute that she met a client socially but disputes that this is the reason for her discharge.

Because EDC set forth a legitimate, nondiscriminatory basis for Ward's discharge, Ward must produce evidence showing EDC's proffered reasons are a pretext for discrimination or are not worthy of belief. *See Feges*, 483 N.W.2d at 711; *see also Johnson*, 994 F.2d at 547 (to withstand summary judgment plaintiff must establish issue of material fact as to whether employer's reasons are credible). The focus at this stage is on whether the employer's proffered reason is pretextual. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.

■ Ward argues that EDC's proffered reason is not worthy of belief because EDC did not have an established policy prohibiting dating between EDC employees and clients. EDC did not have an established policy, but it did have a general provision allowing dismissal for breach of ethical and quality standards. The absence of an established policy does not equate to pretext. *See Lowe v. J.B. Hunt Transp.*, 963 F.2d 173, 175 (8th Cir. 1992) (focus is on whether plaintiff was fired because of age, not whether plaintiff "was fired for an insufficient reason in some general sense").

■ Ward's remaining evidence identifies three incidents to support her claim of age-biased discharge. One alleged incident involved problems with an inexperienced receptionist who had difficulty taking messages. Lamp advised Ward not to be too hard on the younger woman because Ward was more experienced, and the new receptionist needed time to learn. The second alleged incident involved Lamp telling her she could not read newspapers when she had work to do because she should be an example to the employees she supervised. The third was a similar comment that because she was older than the other employees, she should set an example.

The district court was not persuaded that these alleged comments, taken as true, reasonably suggested that age played a role in the decision to discharge Ward, and neither are we. Although the other secretaries were younger than Ward, the evidence does not demonstrate a pattern of preference for younger employees or a general refusal to hire older employees. Ward herself was hired at age forty-eight and promoted at age forty-nine. *See Lowe*, 963 F.2d 173 at 175 (upholding directed verdict when plaintiff was a member of the protected age group both at the time of hiring and firing and the same people who hired also fired). Because the employer's reason is factually undisputed and because Ward failed to demonstrate some evidence that age was a factor in her

discharge, the trial court appropriately granted summary judgment in favor of EDC and Lamp.

## II

It is well settled in Minnesota law that definite policy language in employment manuals or handbooks can modify the employment relationship and constitute a binding unilateral contract. *See Pine River State Bank v. Mettille,* 333 N.W.2d 622, 630 (Minn. 1983); *see also Lewis v. Equitable Life Assurance Soc'y.,* 389 N.W.2d 876, 883 (Minn. 1986) (applying *Pine River* analysis); *Hunt v. IBM Mid Am. Employees Fed. Credit Union,* 384 N.W.2d 853, 856–57 (Minn.1986) (same). The specificity of the language is the critical point for the analysis; general statements of policy do not meet contractual requirements for an offer. *Lewis,* 389 N.W.2d at 883. Whether the language rises to the level of a binding contract is a legal determination for the court. *Hunt,* 384 N.W.2d at 856. Ward contends that the language in Article 4, Section 2 of EDC's handbook created a contract that she could not be immediately terminated unless she committed conduct in the course of her employment that was detrimental to ethical or quality standards communicated by EDC. Ward's claim is similar to the claim in *Hunt,* and we believe *Hunt* is controlling.

Like the handbook in *Hunt,* the EDC handbook contains no detailed procedures that the company must follow in terminating employees "for cause." The EDC language does not qualify EDC's right to discharge an employee nor does it evidence an intent to restrict that right. Moreover, like the language in *Hunt,* the EDC manual can be read to reserve to the company the power of discretion to terminate an employee immediately. That the language is too indefinite to be enforceable is demonstrated by the absence of a definition or example of the ethical or quality standards referred to in the provision. *Id.* at 857. The absence of definition makes the language too vague for a jury to determine what conduct was prohibited in determining whether a breach occurred.

Summary judgment is appropriate when the alleged facts, accepted as true, cannot establish a modification to the at-will relationship. *Audette v. Northeast State Bank,* 436 N.W.2d 125, 127 (Minn.App.1989). Because EDC's handbook language was insufficiently definite as a matter of law, summary judgment was appropriate on this issue.

**Affirmed.**