**John LeBLOND, Plaintiff,**

v.

**GREENBALL CORPORATION, Defendant.**

**Civ. No. 5–95–49.**

United States District Court, D. Minnesota, Fifth Division.

July 8, 1996.

---

Richard William Curott, Curott Law Office, Milaca, MN, for John LeBlond.

Elizabeth Hoene Martin, Damon L. White, Doherty Rumble & Butler, St. Paul, MN, for Greenball Corporation.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by Title 28 U.S.C. § 636(c)(3), upon the Defendant's Motion for Partial Summary Judgment.

A Hearing on the Motion was conducted on February 15, 1996, at which time the Plaintiff appeared by Richard W. Curott, Esq., and the Defendant appeared by Elizabeth H. Martin, Esq.

For reasons which follow, we grant the Defendant's Motion.

### II. *Factual and Procedural History*

The Defendant is a specialty tire and wheel distributor, which has its headquarters in Long Beach, California. In 1993, the Defendant decided to expand its operations by opening a branch in Elkhart, Indiana (the "Elkhart Branch"). On or about June 1, 1993, the Plaintiff was hired as a sales representative for the Elkhart Branch by John Hill, III ("Hill"), who was then the Branch's Vice President of Sales and Marketing. *Complaint, Exhibit A.* The Plaintiff's sales territory included the States of Minnesota, Wisconsin, North Dakota, South Dakota, Iowa and Nebraska. As compensation for his services, the Plaintiff received a $30,000 annual salary and a sales commission. *Id.* At the time of his hiring, the Plaintiff was 51 years old.

The Plaintiff was employed by the Defendant for roughly 15 months. For most of that time, he was directly supervised by Hill, however, on or about April 1, 1994, George Stacy ("Stacy"), a senior officer of the Defendant, was assigned to the Elkhart Branch, with supervisory authority over both Hill and the Plaintiff. *Deposition of John A. Hill*, at 53. Throughout much of the Plaintiff's term of employment with the Defendant, the Elkhart Branch suffered substantial financial losses. *Affidavit of George Stacy*, at ¶ 5. Indeed, the income statements of that Branch, for the months ending on July 31, 1994, and on August 30, 1994, revealed losses for the fiscal year of $214,995.63 and $174,581.02, respectively. *Id., Exhibits A and B.* More specifically, during the term of his employment, the Plaintiff failed to generate sales income which exceeded the cost of his salary and his related business expenses. *Id.,* at ¶ 5.

The Defendant's concern over the Plaintiff's less than expected sales performance was exacerbated by his appearance as having an insufficient knowledge of the product lines that he was supposed to market. *Affidavit of George Stacy*, at ¶ 6. Both Stacy and Hill became aware of the Plaintiff's unfamiliarity with the Defendant's product lines through telephone conversations with him, and by their review of his written itineraries, call reports and requests for price quotations. *Id.; Deposition of John A. Hill*, at 32–34. These documents, in particular, reflected the Plaintiff's inability to answer basic customer questions concerning matters such as tire size and application. *Affidavit of George Stacy*, at ¶ 6.

Moreover, notwithstanding the concerns about his marketing performance and his product knowledge, the Plaintiff's employment tenure was marked by episodes of personality conflicts with other employees at the Elkhart Branch. *Id.,* at ¶ 7. As one example, at some point during the early months of 1994, the Plaintiff made an impolite and unwarranted demand upon an office worker. As a result, the office worker became "very upset," and Hill was required to intervene to resolve the rift created by the Plaintiff's conduct. See, *Deposition of John A. Hill*, at 67–68.

Ultimately, these concerns culminated in Stacy's determination that the Plaintiff would benefit from a week-long training session at the Defendant's Elkhart facility. *Affidavit of George Stacy*, at ¶ 8. This training was intended to assist the Plaintiff in acquiring greater knowledge of both the Defendant's products, and "with all of the office procedures at Elkhart so that he would better understand the processing of telephoned customer orders, the accounting, inventory issues, the pressures on office staff, etc." *Id.* Stacy intended that the training be "hands-on," with the Plaintiff rotating between different departments within the Elkhart Branch. *Id.,* at ¶ 9. It was Stacy's hope that, through this training, the Plaintiff would not only become more effective as a sales representative, but would also become more sensitized to office procedures, so as to reduce the difficulties that had been experienced in his prior exchanges with the office staff. *Id.,* at ¶ 8.

On August 22, 1994, Stacy telephoned the Plaintiff, informing him that he would be required to spend the week of August 29, 1994, in training at the Elkhart Branch. *Id.* In response, the Plaintiff offered several excuses as to why he could not attend the session. Stacy informed the Plaintiff that the training was mandatory, and that it could not be rescheduled for several weeks. *Id.,* at ¶ 10. Stacy also informed the Plaintiff that, if his training was rescheduled, he would not be allowed in the field, as a sales representative, until the training had been completed. *Id.* Nevertheless, Stacy did grant the Plaintiff permission to arrive at the training one day later than had been originally scheduled. *Id.*

On August 29, 1994, Stacy received a telefacsimile, dated August 26, 1994, from a physician who reported that the Plaintiff was having chest pains and that he needed to undergo a stress test. *Id.,* at ¶ 11. The stress test was to be administered approximately one week later. *Id.* Upon receipt of the doctor's report, Stacy immediately telephoned the Plaintiff and directed him not to report for the training session. Stacy also

informed the Plaintiff that he was being placed on sick leave, and would remain on that status until his physician "gave him a clean bill of health." *Id.*

On that same day—August 29, 1994—during an extended series of telephone calls, the Plaintiff asked Stacy, as many as 15 or 20 times, to let him resume his work as a sales representative. *Id.,* at ¶ 12. Stacy informed the Plaintiff that he felt very strongly that the Plaintiff should not return to work until his physician had performed the stress test, and had released him from any health-related work restrictions. *Id.* Although the Plaintiff repeatedly stated that he felt fine, Stacy remained adamant that the Plaintiff not return to his sales duties until he was tested and released for work by his physician. *Id.* In response, the Plaintiff stated that he would see his physician and would obtain a release. *Id.* at ¶ 13.

The following day—on August 30, 1994—Stacy received a telefacsimile from the Plaintiff's physician advising that the Plaintiff could resume his work as a sales representative, but should be restricted from physical work and from lifting. *Id.* at ¶ 14. The Plaintiff then telephoned Stacy, insisting that Stacy was now compelled to allow the Plaintiff to return to work, notwithstanding the fact that the Plaintiff would not be attending the training session at the Elkhart Branch. *Id.* Stacy has averred that he responded to the Plaintiff's demands by instructing him "to quit calling me pushing the issue and to simply take his time on sick leave until the stress test." *Id.* Despite this directive, Stacy has testified that the Plaintiff "continued to push the issue and said in reply to my suggestion that if he valued his job he should quit calling me, that I could not fire him because he was on sick leave." *Id.*

The Plaintiff has not disputed this recounting of the pertinent facts—with one notable exception. It is the Plaintiff's contention that, during this sequence of telephone conversations with Stacy, Stacy uttered the following statement:

Look at your age. Look at how old you are. You are never going to be up to par.
*Plaintiff's Answer to Defendant's Interrogatory No. 16.*

Stacy has denied making any such statement. *Affidavit of George Stacy,* at ¶ 19.

After his August 30 telephone conversation with the Plaintiff, Stacy decided to terminate the Plaintiff's employment. *Id.* at ¶ 15. While Stacy admits that his telephone exchanges with the Plaintiff may have hastened the decision to terminate the Plaintiff's employment, he also states that the decision itself was motivated by the following factors:

(1) the financial losses of the Elkhart Branch;

(2) the Plaintiff's inadequate sales performance;

(3) the Plaintiff's "seeming resistance to instruction;" and

(4) the Plaintiff's conflicts with the other office personnel at the Elkhart Branch.

*Id.*

Stacy has flatly denied that the Plaintiff's age was a factor in the decision to terminate his employment. *Id.* at ¶ 17.

After deciding to terminate the Plaintiff's employment, Stacy contacted Hill and instructed him to notify the Plaintiff, by letter, of his firing. *Id.* at ¶ 16; *Deposition of John A. Hill,* at 88. In response to this directive, Hill drafted a termination letter which Stacy then edited. *Affidavit of George Stacy,* at ¶ 19; *Deposition of John A. Hill,* at 92–93. The final product of this collaboration was a letter from Hill to the Plaintiff, dated August 30, 1994, which informed the Plaintiff that his position was being eliminated "[d]ue to economic conditions and company sales within [the Plaintiff's] sales area * * *." *Complaint, Exhibit B.* The Plaintiff received a copy of this letter both by telefacsimile and by mail, and he was also orally informed by Hill of his termination, in a telephone call on August 30, 1994. *Deposition of John A. Hill,* at 88, 92. At no time during this notification process did Stacy provide Hill with any intimation that the Plaintiff's age was a motivating factor in the decision to terminate his position. *Id.* at 96. Furthermore, when he conferred with Stacy on the subject, Hill expressed no objection to Stacy's decision to

**1214**

terminate the Plaintiff's employment.[1]  *Affidavit of George Stacy*, at ¶ 16. At the time of his termination, the Plaintiff was 52 years of age.

In addition to the foregoing, two events occurred after the Plaintiff's termination which are pertinent to the Defendant's Motion. First, Hill was subsequently terminated from the Defendant's employment, also for economic reasons. *Deposition of John A. Hill*, at 108–09. Second, at approximately this same time, the sales position which had previously been occupied by the Plaintiff was reinstated, and a new employee—a 59 year old male—was hired to fill that opening. *Affidavit of George Stacy*, at ¶ 18.

The Plaintiff then commenced this action, in Minnesota District Court, on February 28, 1995. In his Complaint, the Plaintiff alleges that the Defendant illegally terminated his employment because of his age, in violation of Minnesota Statutes Sections 363.01 *et seq.* and 181.81. In addition, the Plaintiff contends that the Defendant has violated Minnesota Statutes Section 181.13, by failing to pay the Plaintiff his accrued wages and commissions in a timely fashion. As a consequence, the Plaintiff seeks damages in excess of fifty thousand dollars.

Relying upon the parties' diversity of citizenship as a jurisdictional predicate, on March 29, 1995, the Defendant filed a timely Petition, which removed the action to this Court. See, *Title 28 U.S.C. § 1441*. By its pending Motion, the Defendant seeks an award of Summary Judgment on the Plaintiff's claim of age discrimination. Notably, no Federal questions are presented in the Plaintiff's pleaded claims.

### III. *Discussion*

A. *Standard of Review.* The Court is mindful that Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence and in rendering credibility determinations. *Celotex Corp. v. Catrett*, 477 U.S.

317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). Summary Judgment is appropriate where we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the non-moving party, and we have found no triable issue, and the Plaintiff has not identified any genuine issue of material fact which would preclude the entry of Summary Judgment. *Cram v. Lamson & Sessions Co.*, 49 F.3d 466, 471 (8th Cir.1995); *Barnard v. Jackson County, Missouri*, 43 F.3d 1218, 1223 (8th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 53, 133 L.Ed.2d 17 (1995). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the non-moving party. See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Churchill Business Credit Inc., v. Pacific Mutual Door Co.*, 49 F.3d 1334, 1336 (8th Cir.1995); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66–67 (8th Cir.1994).

As Rule 56(e), Federal Rules of Civil Procedure, makes clear, once the movant files a properly supported Motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Rule 56(e), Federal Rules of Civil Procedure; Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995); *State of Nebraska ex rel. Nelson v. Central Interstate Low–Level Radioactive Waste Commission*, 26 F.3d 77, 80 (8th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 483, 130 L.Ed.2d 395 (1994).

Moreover, a Defendant is entitled to Summary Judgment where a Plaintiff has failed "to establish the existence of an element essential to [his] case, and on which [he] will

---

**1.** At his deposition, Hill testified that, while he disagreed with the decision to terminate the Plaintiff's employment, *Deposition of John A. Hill* at 100, he voiced no opposition to the firing and, as noted, he drafted and signed the letter which formally terminated the Plaintiff's employment.

bear the burden of proof at trial." *Celotex Corp. v. Catrett,* supra 477 U.S. at 322, 106 S.Ct. at 2552; *St. Paul Fire & Marine Ins. Co. v. Federal Deposit Ins. Corp.,* 968 F.2d 695, 699 (8th Cir.1992). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of [the Plaintiff's] case necessarily renders all other facts immaterial." *Id.* 477 U.S. at 323, 106 S.Ct. at 2552; *Fischer v. NWA, Inc.,* 883 F.2d 594, 599 (8th Cir.1989), cert. denied, 495 U.S. 947, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990).

B. *Legal Analysis.* In support of its Motion for Summary Judgment, the Defendant primarily relies upon the Plaintiff's asserted failure to satisfy the elements that are essential to a *prima facie* showing of age discrimination. Alternatively, the Defendant maintains that the Plaintiff has failed to demonstrate that the Defendant's stated reasons for firing him served as a pretext to disguise an impermissible motivation for his termination; namely, a discriminatory animus towards the Plaintiff that was driven by his age.

Responding to the Defendant's Motion, the Plaintiff argues that the Record contains direct evidence that age was a motivating factor in his termination. Specifically, he focuses our attention on Stacy's purported statement: "Look at your age[;] [l]ook at how old you are[;] [y]ou are never going to be up to par." According to the Plaintiff, the presence of such direct evidence of age discrimination creates a genuine issue of material fact which precludes the entry of Summary Judgment.

1. *Standard of Review.* The Plaintiff has alleged the occurrence of "disparate treatment," in that he claims that the Defendant treated him less favorably than other employees because of the Plaintiff's age. See, *Sigurdson v. Isanti County,* 386 N.W.2d 715, 719 n. 1 (Minn.1986). To redress the claimed injury, the Plaintiff has resorted to the provisions of the Minnesota Human Rights Act, see *Minnesota Statutes Sections 363.03,* and of Section 181.81, which generally prohibit termination, and job-related discrimination based upon an employee's age.

■ Under Minnesota law, disparate treatment claims are analyzed under the now-familiar framework first espoused in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See, *Dietrich v. Canadian Pacific Ltd.,* 536 N.W.2d 319, 323 (Minn.1995). This analysis has been summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), quoting *McDonnell Douglas Corp. v. Green,* supra 411 U.S. at 802, 93 S.Ct. at 1824. Notwithstanding the shifting burdens of proof, the ultimate burden of persuasion never shifts, and rests, at all times, on the Plaintiff. *Sigurdson v. Isanti County,* supra at 720 n. 2, citing *Texas Dept. of Community Affairs v. Burdine,* supra 450 U.S. at 253, 101 S.Ct. at 1093–94.

■ Accordingly, at the first step in the *McDonnell Douglas* analysis, the Plaintiff is required to present a *prima facie* case of employment discrimination. The *prima facie* case may be established by direct evidence of a discriminatory motive or, when direct evidence is lacking, by indirect evidence through which a discriminatory motive may be inferred. *Dietrich v. Canadian Pacific Ltd.,* supra at 323; *Sigurdson v. Carl Bolander & Sons, Co.,* 532 N.W.2d 225, 228 (Minn.1995); *Feges v. Perkins Restaurants, Inc.,* 483 N.W.2d 701, 710 (Minn.1992); *Sigurdson v. Isanti County,* supra at 720. Within the context of an age discrimination claim that is premised upon indirect evidence, the Plaintiff must establish each of the

following elements in order to prove his *prima facie* case:

  (1) the plaintiff was a member of a protected class;

  (2) he was qualified for the position he held;

  (3) despite his qualifications, his employment was terminated; and

  (4) a younger person was assigned to do his work.

*Ward v. Employee Development Corp.*, 516 N.W.2d 198, 201 (Minn.App.1994), pet. for rev. denied, (Minn., July 8, 1994). Once a Plaintiff establishes a *prima facie* case of employment discrimination, a rebuttable presumption that the Defendant unlawfully discriminated against the Plaintiff is created, and the inquiry proceeds to the second step of the *McDonnell Douglas* analysis. *Feges v. Perkins Restaurants, Inc.*, supra at 711; *Sigurdson v. Isanti County*, supra. At the second step, the Court considers any evidence, as presented by the Defendant, that the Defendant's actions were related to a legitimate business purpose. *Sigurdson v. Isanti County*, supra. The legitimacy rationale "must be offered by admissible evidence, be of a character to justify a judgment for the defendant, and must be clear and reasonably specific enough to enable the plaintiff to rebut the proffered reasons as pretextual." *Feges v. Perkins Restaurants, Inc.*, supra; see also, *Sigurdson v. Isanti County*, supra.

  If the Defendant produces evidence of such a legitimate purpose, the presumption of unlawful discrimination disappears, the inquiry shifts to the third step of the *McDonnell Douglas* analysis, and the Plaintiff must persuade the Court, by a preponderance of the evidence, that the Defendant intentionally discriminated against him. *Feges v. Perkins Restaurants, Inc.*, supra; *Sigurdson v. Isanti County*, supra. The Plaintiff sustains this burden "either directly by persuading the court that a discriminatory reason likely motivated the employer or indirectly by showing that the employer's prof-

fered explanation is unworthy of credence." *Sigurdson v. Isanti County*, supra, quoting *Texas Dept. of Community Affairs v. Burdine*, supra 450 U.S. at 256, 101 S.Ct. at 1095; see also, *McGrath v. TCF Bank Savings*, 509 N.W.2d 365, 366 (Minn.1993); *Feges v. Perkins Restaurants, Inc.*, supra.

  2. *Legal Analysis.* As a threshold observation, it appears to us that both parties have misapprehended—at least to some extent—the applicable criteria by which the propriety of the Defendant's Motion is to be evaluated. Apparently, the Defendant takes the position that the Plaintiff cannot possibly prove a *prima facie* case of age discrimination, because he cannot satisfy each of the four elements that were enunciated by the Court in *Ward v. Employee Development Corp.*, supra. As we have explained, however, the analytical approach, that was detailed in *Ward*, enables a Court to infer the existence of employment discrimination from indirect or circumstantial evidence. When direct evidence of a discriminatory motive is presented, a Plaintiff may establish a *prima facie* case without resort to the four-factor test that is used to appraise inferential evidence. See, *Dietrich v. Canadian Pacific Ltd.*, supra; *Sigurdson v. Carl Bolander & Sons, Co.*, supra; *Feges v. Perkins Restaurants, Inc.*, supra at 710 n. 4; *Sigurdson v. Isanti County*, supra.

  For his part, the Plaintiff seems to believe that the mere presentation of direct evidence of a discriminatory motive—in and of itself—requires that the age discrimination claim be submitted for a Jury's resolution. Such a belief is plainly a misreading of the applicable law. While direct evidence can—without more—establish a Plaintiff's *prima facie* showing of employment discrimination, the claim itself must still be scrutinized under the remaining steps of the *McDonnell Douglas* framework. *Dietrich v. Canadian Pacific Ltd.*, supra; *Feges v. Perkins Restaurants, Inc.*, supra; *Sigurdson v. Isanti County*, supra.[2]

---

2. For this reason, the Plaintiff's reliance upon the plurality decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), is misplaced. *Price Waterhouse* established the analytical construct that is to be employed by Federal Courts, when evaluating employment discrimination claims under Federal law, in so-called "mixed motive" cases—that is, in those cases where the alleged discriminatory animus is asserted to be *a* motivating factor, but

Therefore, with the foregoing as a backdrop, we turn our analysis to the Plaintiff's claim of age discrimination beginning, as we must, with an assessment of the Plaintiff's *prima facie* showing of discrimination. It is conceded by the parties—and we think properly so—that the Plaintiff cannot establish his *prima facie* case through the inferential approach. As noted, such a showing would require the Plaintiff to provide evidence that, subsequent to his termination, a younger individual assumed his former duties as a sales representative. Quite obviously, the Plaintiff is unable to make such a showing, as the Record before us conclusively demonstrates that the Defendant replaced the Plaintiff with an employee who was several years *older* than the Plaintiff. Accordingly, if the Plaintiff is to establish a *prima facie* showing of discrimination, he must do so by direct evidence of the Defendant's allegedly discriminatory intent.

As we have noted, the direct evidence, upon which the Plaintiff relies, is limited to Stacy's purported age-related comment. Although Stacy denies that the statement was made, for the purposes of this Motion, we are obliged to assume that the statement is properly attributed to him. Whether the statement constitutes "direct evidence" of a discriminatory motive, however, poses a somewhat thorny issue. In explaining the concept of "direct evidence", the Minnesota Supreme Court has offered, as an example of such evidence, the circumstance "where an employer announces he will not consider females for positions." *Sigurdson v. Isanti County,* supra, citing *Hardin v. Stynchcomb,* 691 F.2d 1364 (11th Cir.1982). Here, Stacy's

statement is not so unequivocal, as he did not expressly or unambiguously declare that the Plaintiff was being fired because of his age. Rather, Stacy made a comment which still requires an inference to bridge the causative gap between the statement made and a discriminatory act of job termination. As such, the statement is not, in any strict hornbook sense, "direct evidence" at all but, rather, it is "indirect" or "circumstantial" in nature. See, *Stacks v. Southwestern Bell Yellow Pages, Inc.,* 996 F.2d 200, 201 n. 1 (8th Cir.1993); *Reiff v. Interim Personnel, Inc.,* 906 F.Supp. 1280, 1288 n. 3 (D.Minn.1995).

We need not, however, resolve the issue, under Minnesota law,[3] of whether Stacy's statement was "direct evidence" as, for these purposes, we may assume, without determining, that the statement was sufficiently connected to Stacy's decision to terminate the Plaintiff, as would warrant its treatment as direct evidence so as to satisfy the Plaintiff's burden in establishing a *prima facie* showing of discrimination. Having proved his *prima facie* case, the burden passes to the Defendant to demonstrate a nonpretextual, nondiscriminatory basis for the Plaintiff's firing. It is at this stage of the analysis that the Plaintiff's proof falters, for he has failed to raise an evidentiary basis upon which to argue that the Defendant's explanation of his firing was merely a pretext for discrimination. Accordingly, he has failed to prove an essential element of his claim and is unable to sustain his ultimate burden of proving his age discrimination claim, as a matter of law.

■ Since the Defendant has offered four non-discriminatory explanations for the

---

not *the* motivating factor for the Defendant's allegedly discriminatory acts. *Id.* at 258, 109 S.Ct. at 1794–95; see also, *Beshears v. Asbill,* 930 F.2d 1348, 1353 (8th Cir.1991); *Reiff v. Interim Personnel, Inc.,* 906 F.Supp. 1280, 1286 (D.Minn. 1995). Under Minnesota employment law, however, both "single motive" and "mixed motive" claims of disparate treatment are to be analyzed under the *McDonnell Douglas* test. *Anderson v. Hunter, Keith, Marshall & Co.,* 417 N.W.2d 619, 626–27 (Minn.1988); *McGrath v. TCF Bank Savings,* 502 N.W.2d 801, 806 (Minn.App.1993), affirmed as modified, 509 N.W.2d 365 (Minn. 1993). Accordingly, since no Federal claim has been alleged by the Plaintiff, the principles enunciated in *Price Waterhouse,* have no application here.

3. While not dispositive of the issue, we have no reason to doubt that Stacy's statement would be treated as "direct evidence" under the Federal Age Discrimination in Employment Act, Title 29 U.S.C. §§ 621 *et seq.,* for our Court of Appeals has found closely similar statements to constitute "direct evidence," of a discriminatory motive within that statutory context. See, e.g., *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 449 (8th Cir.1993); *Stacks v. Southwestern Bell Yellow Pages, Inc.,* 996 F.2d 200, 201 n. 1 (8th Cir.1993); *Beshears v. Asbill,* 930 F.2d 1348, 1354 (8th Cir.1991).

Plaintiff's termination, we examine each, individually, so as to determine whether any properly raise a genuine issue of material fact so as to stave an award of Summary Judgment.

### a. The Defendant's Contention that the Plaintiff Was Terminated Because of the Financial Losses of the Elkhart Branch.

The Defendant has offered competent and undisputed evidence that the Elkhart Branch was a money-losing operation, which suffered significant financial losses for the fiscal year that comprised the preponderant share of the Plaintiff's term of employment. See, *Affidavit of George Stacy,* at ¶ 5, and *Exhibits A and B.* As a consequence, the Defendant contends that the Plaintiff's termination was, in large measure, prompted by the dismal economic showings of the Elkhart Branch. *Affidavit of George Stacy,* at ¶ 15. The validity of this contention is bolstered by the fact that, after the Plaintiff's termination, the employment of Hill—who was the Plaintiff's immediate supervisor—succumbed to the same economic cause. See, *Deposition of John A. Hill,* at 108–09.

We conclude, therefore, that this evidence reveals that the decision to terminate the Plaintiff was, in no small part, motivated by a legitimate business purpose. Notwithstanding the force of the Defendant's showing, the Plaintiff has offered nothing to rebut its legitimacy. Accordingly, we are presented with no evidentiary basis upon which to conclude that this cause of the Plaintiff's firing is merely pretextual or is otherwise unworthy of belief.

### b. The Defendant's Contention that the Plaintiff Was Terminated Because of His Inadequate Sales Performance.

Next, the Defendant has submitted competent and uncontroverted evidence that the income generated by the Plaintiff's sales failed to cover the costs of his salary and his related business expenses. See, *Affidavit of George Stacy,* at ¶ 5. In addition, the Defendant has proffered similarly competent, and substantively uncontradicted evidence that the Plaintiff's knowledge of the Defendant's product lines was deficient. See, *Affidavit of George Stacy,* at ¶ 6; *Deposition of John A.*

*Hill,* at 32–34. According to the Defendant's proofs, these shortcomings also fostered Stacy's decision to end the Plaintiff's employment. *Affidavit of George Stacy,* at ¶ 15.

To rebut this ostensibly legitimate explanation of his firing, the Plaintiff offers no more than Hill's testimony that, as a sales representative, the Plaintiff was "average to above average in some categories." *Deposition of John A. Hill,* at 106. This characterization of the Plaintiff's salesmanship, however, fails to create a genuine issue of material fact because, in other portions of his deposition testimony, Hill admitted that he did not have access to the Plaintiff's total sales or expenses and that, as a consequence, he was unable to determine whether the Plaintiff's sales matched the costs of his employment. *Id.* at 39–40, 47. Moreover, Hill acknowledged that the Plaintiff's knowledge of the Defendant's product lines was, in several respects, suspect. *Id.* at 32–34. As a result, the Plaintiff has failed to carry—let alone advance—his burden to demonstrate that the Defendant's justification for his dismissal was merely a pretext for unlawful discrimination.

### c. The Defendant's Contention that the Plaintiff Was Terminated Because of His "Seeming Resistance To Instruction."

In support of this explanation of the Plaintiff's termination, see *Affidavit of George Stacy* at ¶ 15, the Defendant has offered competent evidence, that has not been disputed, which reveals that, when he was directed to report to the Elkhart Branch for remedial training, the Plaintiff sought to avoid this directive with a variety of excuses. *Id.* at ¶ 10. As a consequence, the Defendant has sustained its burden of demonstrating yet another legitimate business purpose which prompted its decision to terminate the Plaintiff's employment. Here again, the Plaintiff has offered no evidence, whatsoever, to rebut the Defendant's proof and, accordingly, we are without a basis to find the Defendant's explanation to be pretextual or unworthy of credence.

### d. The Defendant's Contention that the Plaintiff Was Terminated Because of His Conflicts with Office Personnel at the Elkhart Branch.

Lastly, the Defendant has submitted evidence, both competent and undisputed, to

demonstrate that, during the period of his employment, the Plaintiff participated in personality conflicts with other employees of the Defendant. *Id.* at ¶ 7; *Deposition of John A. Hill,* at 67–68. This, too, has been offered by the Defendant as explaining its decision to conclude the Plaintiff's term in its employ. *Affidavit of George Stacy,* at ¶ 15. To rebut this legitimate business rationale for an employment termination, the Plaintiff has offered no evidence of any sort and, therefore, he is unable to argue that the Defendant's explanation is either incredible or pretextual.

Beyond his failure to rebut, on any competent, evidentiary basis, the Defendant's proof of nondiscriminatory and legitimate business justification for his discharge, our considered review of the Record confirms that the Plaintiff's entire evidentiary showing is premised upon Stacy's purported comment, which is not otherwise corroborated, and which is insufficient to rebut the Defendant's nonpretextual business reasons for his termination.[4] While this evidence is sufficient to establish the Plaintiff's *prima facie* showing of age discrimination—at least under the circumstances presented here—without more, it is insufficient to demonstrate the existence of a genuine issue of material fact. Where, as here, the Defendant's legitimate, nondiscriminatory reasons for the Plaintiff's discharge have gone unrebutted, Summary Judgment is appropriate. See, e.g., *Dietrich v. Canadian Pacific Ltd.,* supra at 324 n. 8 (recognizing, as an alternative basis for Summary Judgment, that employee had failed to demonstrate that employer's discharge decision was a pretext for age discrimination); *Hauge v. Country Club Market, Inc.,* 374 N.W.2d 507, 509 (Minn.App.1985) (Court held that reference by decisionmaker to claimant "as one of 'those old bags,'" was insufficient to demonstrate discriminatory intent when considered with other evidence of non-discriminatory bases for the claimant's termination.).

Finally, we are unable to ignore the basic and undisputed facts the Plaintiff was hired by the Defendant at the age of 15 and that, only 15 months later, the Plaintiff was discharged by the same individual who. had hired him. Under strikingly similar circumstances, in the context of a Federal age discrimination claim, our Court of Appeals affirmed the District Court's grant of a directed verdict for the employer, with the following cogent observation:

> The most important fact here is that the plaintiff was a member of the protected age group both at the time of his hiring and at the time of his firing, and that the same people who hired him also fired him. * * * If plaintiff had been forty when he was hired, and sixty-five when he was fired, obviously this fact would not be so compelling. But here, the lapse of time was less than two years. It is simply incredible, in light of the weakness of plaintiff's evidence otherwise, that the company officials who hired him at age fifty-one had suddenly developed an aversion to older people less than two years later.

*Lowe v. J.B. Hunt Transport, Inc.,* 963 F.2d 173, 174–75 (8th Cir.1992) [internal citation omitted].

We think this observation has greater forcefulness here for, within six to eight months after the Plaintiff's termination, his former position was filled by an individual who was seven years older than the Plaintiff. Consequently, to accept the Plaintiff's argument requires a fanciful surmise that, for one brief moment while the Defendant was being plagued by the Plaintiff's telephone calls, the Defendant resorted to age discrimination as a justification for the Plaintiff's discharge, and did not rely upon the wealth of nondiscriminatory reasons that are amply, and incontrovertibly, supported by this Record. We are satisfied that no reasonable Juror could accept such imaginative theorizations

---

4. In his deposition, Hill testified that another employee of the Defendant informed him that she overheard Stacy make the disputed comment. Such evidence is, of course, hearsay and, therefore, not cognizable for purposes of this Motion. See, *Rule 56(e), Federal Rules of Civil Procedure* ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant *is* competent to testify to the matters stated therein.").

as competent proof of age discrimination, and nor can we.[5]

NOW, THEREFORE, It is—

ORDERED:

That the Defendant's Motion for Partial Summary Judgment [Docket No. 9] is GRANTED.

**5.** We would note that we are not confronted with the situation that the Court faced in *McGrath v. TCF Bank Savings*, supra, 509 N.W.2d at 366, since a Jury here could not conclude, based upon the Record before us, that an illegitimate reason, "more likely than not," served as the basis for an employment decision. Nor are we required to voice any view in the recent debate as to how the Minnesota Supreme Court would resolve this case if the Plaintiff had rebutted the Defendant's showings of business legitimacy, see *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1338–39 (8th Cir.1996); and *Hasnudeen v. Onan Corp.*, 531 N.W.2d 891, 894 (Minn.App.1995), pet. for rev. granted (Minn., July 20, 1995), for the Plaintiff's failure of proof obviates any such discourse. Indeed, we find our conclusion to be fully consistent and, therefore, compatible, with the Minnesota Supreme Court's decision in *Dietrich v. Canadian Pacific Ltd.*, 536 N.W.2d 319, 326 (Minn. 1995). To the extent that the Plaintiff has urged that Summary Judgment is generally inappropriate in discrimination cases, we would merely observe, as did the Court in *Dietrich*, that "[t]his is not the law in Minnesota." *Id.* at 326 n. 9.