Kenneth A. BROOKSHAW, Appellant,

v.

SOUTH ST. PAUL FEED,
INC., Respondent.

No. C2–85–1380.

Court of Appeals of Minnesota.

Feb. 4, 1986.
Review Denied April 11, 1986.

Donald E. Horton, Minneapolis, for appellant.

Robert S. Burk, Larry D. Espel, Minneapolis, for respondent.

Heard, considered and decided by PARKER, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellant employee Kenneth Brookshaw claims his discharge from employment with respondent South St. Paul Feed, Inc. was in breach of an implied contract of employment created by distribution of an employee handbook to all employees of South St. Paul Feed. He appeals from an order granting summary judgment in favor of respondent South St. Paul Feed, Inc. We affirm in part, reverse in part and remand.

## FACTS

Appellant Kenneth Brookshaw was employed by respondent South St. Paul Feed, Inc. from 1965 to September 2, 1982, the date of his termination. He was a warehouse worker until 1973 when he received a promotion to foreman. His job duties as a foreman included supervision of warehouse workers and assistance with the loading and unloading of feed and materials. In 1981 South St. Paul Feed expanded its operation and a new warehouse was built. Brookshaw was reassigned to the new building and his job title was changed from foreman to plant superintendent, but his duties remained the same.

In 1980 South St. Paul Feed distributed to its employees, including Brookshaw, a printed Employee Personnel Policy and Procedure Manual. The employee manual contained information on the company's employment policies, including such matters as working hours, vacations and sick leave. With respect to employee responsibilities, the manual discussed such matters as punctuality, safety, and personal appearance. The manual also contained a section on "disciplinary policies." According to South St. Paul Feed, the booklet was intended only to give employees a brief de-

scription of working conditions and was never meant to become part of an employee's contract with the company.

In February, 1982 South St. Paul Feed hired John Stoffel as a maintenance mechanic. Stoffel and Brookshaw did not get along. Brookshaw alleges that Stoffel was giving other employees orders without his permission and telling them he was going to be the new foreman. South St. Paul Feed claims Brookshaw disseminated confidential information about Stoffel's wage to other employees and openly criticized Stoffel's employment performance.

In March, 1982 Brookshaw met with South St. Paul Feed's owners to discuss the problems he was having with Stoffel. At the close of the meeting the owners decided to give Brookshaw four weeks off from work with pay as a suspension for Brookshaw's past behavior towards Stoffel, hoping Brookshaw would return to work with a "new attitude." Brookshaw claims the four weeks were given in order to alleviate stress he began experiencing in late fall, 1981 which he alleges resulted directly from the responsibilities of his new position as Plant Superintendent. Despite this stress and a resultant stomach ulcer, Brookshaw missed no time from work before his four week layoff.

The difficulties between Brookshaw and Stoffel continued after his return from the layoff. In August, 1982 South St. Paul Feed experienced a slowdown in its business and the possibility of layoffs was discussed by the management. An explicit order was given to Brookshaw by South St. Paul Feed's president Gary Duclos not to mention to any employee the discussions concerning layoffs until after an upcoming trade show. Brookshaw told Stoffel of the impending layoffs, alleging he was not given the Duclos order until after he spoke with Stoffel and further alleging that Stoffel mentioned the topic to him first.

On September 2, 1982, Brookshaw's employment with South St. Paul Feed was terminated for talking to a number of employees about the possibility of layoffs af-

ter being instructed by Duclos not to discuss such matters.

A wrongful discharge action was brought by Brookshaw against South St. Paul Feed seeking damages for the company's alleged breach of their employment contract and for discriminating against him on the basis of his disability in violation of Minn.Stat. § 363.03, subd. 1(2)(b), (c). South St. Paul Feed moved for summary judgment alleging: (1) that the employee manual did not create an implied contract of employment with Brookshaw; (2) that if the manual did create an implied contract all of the disciplinary procedures were complied with and thus no breach occurred; and (3) Brookshaw's stomach ulcer and mental stress did not constitute disabilities within the meaning of the statute. The trial court granted summary judgment in favor of South St. Paul Feed.

## ISSUES

1. Did the employee Personnel Policy and Procedure Manual create as a matter of law an implied contract of employment between South St. Paul Feed and Brookshaw?

2. Did the trial court err in its determination that Brookshaw's stomach ulcer and mental stress did not constitute disabilities within the meaning of Minn.Stat. § 361.01, subd. 25?

## ANALYSIS

1. The function of a court reviewing a summary judgment award is to determine whether there are any genuine issues of material fact for trial and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). All doubts and factual inferences must be resolved in favor of Brookshaw, the non-moving party. *See Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981).

Brookshaw argues that genuine issues of material fact exist as to whether the Personnel Policy and Procedure Manual distributed to all South St. Paul Feed employ-

ees created an implied contract of employment and thus the trial court erred in granting summary judgment.

■ Absent an express contract the usual employer-employee relationship is terminable at the will of either party. *Cederstrand v. Lutheran Brotherhood,* 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962).

■ However, if the booklet establishes a definite offer by the employer and acceptance by the employee of a disciplinary procedure that may lead to termination, there may be created an implied contract of employment that prohibits an at-will termination. *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 626–627 (Minn.1983). But there must be clear evidence of intent to offer such procedure. *Id.* at 630.

South St. Paul Feed contends there is no clear evidence of an intent to include an offer of contract here because its employee booklet includes language reserving to management the sole discretion of whether to apply the general provisions and more specifically the disciplinary procedures outlined in the manual. The booklet concluded as follows:

> This booklet is solely intended to give you a short description of the working conditions of South St. Paul Feed and these policies, applied solely at the discretion of management, may be amended or revised as necessary.

■ The existence of a contract and the terms thereof are questions of fact to be determined by the fact finder. *Bergstedt, Wahlberg, Berquist Associates, Inc. v. Rothchild,* 302 Minn. 476, 480, 225 N.W.2d 261, 263 (1975). The provision in question is reasonably subject to several interpretations. South St. Paul Feed claims its "disclaimer" extends to all company policies including the section entitled "Disciplinary Policies" and its inclusion put all employees on notice that the handbook did not constitute an definite offer of contract.

Brookshaw counters the provision reserving the right of South St. Paul Feed to modify the employee booklet does not destroy the formation of a unilateral contract and that the "disclaimer" only provides an option to South St. Paul Feed to revise policies already specified in the handbook.

If South St. Paul Feed chooses to modify its existing policies, a new unilateral contract is offered, and an employee can signify acceptance by remaining on the job. *See Pine River,* 333 N.W.2d at 627. Until such time, however, South St. Paul Feed is subject to the handbook's original terms. Factual disputes such as these must be resolved by the trier of fact.

2. Brookshaw argues that his dismissal resulted in part from the physical problems he was experiencing in the early part of 1982. The trial court granted summary judgment in favor of South St. Paul Feed finding that Brookshaw's ulcer and mental stress were not disabilities within the meaning of Minn.Stat. 363.01, subd. 25. The statute provides in part:

> "Disability" means any condition or characteristic that renders a person a disabled person. A disabled person is any person who (1) has a physical or mental impairment which substantially limits one or more major life activities * * *.

Minn.Stat. § 363.01, subd. 25 (1984).

■ Brookshaw failed to produce by either affidavit or deposition evidence creating a factual question that his ulcer or mental stress substantially limited any of his major life activities. Be that as it may, South St. Paul Feed's dismissal of Brookshaw had no connection with his physical problems. The company's action was a direct result of Brookshaw's relationship with fellow employee Stoffel.

## DECISION

The question of whether the employee handbook with its "disclaimer" provision creates an implied contract of employment is an issue of fact for the jury to decide. Therefore, the order granting summary judgment in favor of South St. Paul Feed is reversed and we remand for trial.

Affirmed in part, reversed in part and remanded.