**Dorothy PRIBIL, Beverly Brand, Marilyn Fischer, Darlene Gray, Mary Beth Hageman, Camille Johnson, Diane Nightengale, Respondents,**

v.

**The ARCHDIOCESE OF ST. PAUL AND MINNEAPOLIS, Appellant.**

Nos. C8–94–2122, C1–94–2124, C6–94–2474, C3–94–2125, C7–94–2127, C9–94–2128, C0–94–2129 and C7–94–2130.

Court of Appeals of Minnesota.

June 20, 1995.

Paul J. Zech, Richard A. Beens, Penelope J. Phillips, Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, for appellant.

Jeffrey R. Anderson, Karen A. Kugler, Joanne Jirik Mullen, Reinhardt and Anderson, St. Paul, for respondent.

Considered and decided by SHORT, P.J., and LANSING and KALITOWSKI, JJ.

## OPINION

KALITOWSKI, Judge.

Respondents prevailed at trial on their claims of age discrimination and breach of an employment contract. Appellant Archdiocese of St. Paul and Minneapolis challenges several determinations by the trial court including the trial court's conclusion that respondents were constructively discharged.

## FACTS

Respondents were all members of the support staff for the Catholic Education Center (CEC), a subdivision of appellant. The CEC underwent a reorganization during 1991 that reduced the number of support staff and reassigned their duties. During the reorganization, appellant contracted with the Jeane

Thorne employment agency to interview and test respondents. The results of the interviews and tests were to be used to assess respondents' qualifications for employment after the reorganization.

Respondents alleged that the new director of the CEC treated them in a degrading and hostile manner throughout the reorganization process, which indicated to respondents that they were no longer wanted. Because of this treatment, respondents felt the Jeane Thorne review process was pointless and decided not to participate in some or all of the process or apply for the new positions. As a result, when respondents' former positions were replaced by the new positions on September 13, 1991, respondents were no longer employed.

In assessing respondents' claims of age discrimination under the Minnesota Human Rights Act, the trial court concluded that respondents were constructively discharged.

## ISSUE

Did the trial court apply the correct legal standard for determining whether respondents were constructively discharged?

## ANALYSIS

■ Findings of fact are not to be set aside unless clearly erroneous, and due regard must be given to the trial court's opportunity to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01. On purely legal issues, the reviewing court is not bound by and need not give deference to a trial court's decision. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

■ Under the Minnesota Human Rights Act, an employer cannot discharge an employee on the basis of age. Minn.Stat. § 363.03, subd. 1(2)(b) (Supp.1993). In construing the Human Rights Act, Minnesota has utilized the three-part analysis established by the Supreme Court in *McDonnell–Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which consists of a prima facie case, an answer, and a rebuttal. *Hubbard v. United Press Int'l,* 330 N.W.2d 428, 441 (Minn.1983).

To make a prima facie case for discriminatory discharge, the employee must show: (1) she is a member of a protected class; (2) she was qualified for the job from which she was discharged; (3) she was discharged; and (4) the employer assigned a nonmember of the protected class to do the same work. *Id.* at 442.

■ Appellant argues that the trial court erred in concluding respondents were constructively discharged. "A constructive discharge occurs when an employee resigns in order to escape intolerable working conditions caused by illegal discrimination." *Continental Can v. State,* 297 N.W.2d 241, 251 (Minn.1980). The intolerable working conditions must have been created by the employer "with the intention of forcing the employee to quit." *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir.1981). If the employee cannot prove her employer consciously meant to force her to quit, then she must prove the employer intended the reasonably foreseeable consequences of its actions. *Hukkanen v. International Union of Operating Eng'rs, Hoisting & Portable Local No. 101,* 3 F.3d 281, 284 (8th Cir.1993). Whether the conditions were in fact intolerable for the employee is judged by a reasonable person standard. *Id.*

In citing the legal standard to determine whether respondents were constructively discharged, the trial court stated: "constructive discharge inquiry 'focuses on the employee's state of mind, and the employer's intent on creating the allegedly intolerable conditions is irrelevant,'" (quoting *Guthrie v. J.C. Penney Co.,* 803 F.2d 202, 207 (5th Cir.1986)). This quotation, standing alone, distorts the legal standard in two ways. First, it implies that the employee's subjective feelings about the working conditions are relevant, when in fact the test is objective. The *Guthrie* court went on to state that "the test remains objective, because it turns, not on the plaintiff's actual reaction, but on the reaction of a 'reasonable employee' in his position." *Guthrie,* 803 F.2d at 207. Thus, how the individual respondents felt about the working conditions at the CEC is not determinative and the trial court's reference to only the employee's state of mind is not the proper test.

 Second, the *Guthrie* court states that the employer's intent on creating the intolerable conditions is irrelevant to a constructive discharge analysis. *Id.* Other federal courts have taken a similar position. *See Rodgers v. Western–Southern Life Ins.*, 12 F.3d 668, 677 (7th Cir.1993); *Morgan v. Ford*, 6 F.3d 750, 755 (11th Cir.1993); *Calhoun v. Acme Cleveland*, 798 F.2d 559, 561 (1st Cir.1986). There is, however, a split of authority among the federal courts regarding this issue. In our view, the more persuasive authority is the approach adopted by the Eighth Circuit Court of Appeals, which requires an employee to show that the employer intended to force the employee to resign. The constructive discharge doctrine was created to prevent employers from forcing employees into resigning by engaging in covert, calculated misconduct that would be illegal if done overtly. Because the doctrine was intended to prevent intentional wrongdoing, scienter is a necessary element. Intent can be proven with direct or circumstantial evidence, or it can be inferred upon a showing that the employee's resignation was a reasonably foreseeable result of the employer's conduct. *Hukkanen*, 3 F.3d at 284; *see Stetson v. NYNEX Service*, 995 F.2d 355, 360 (2d Cir.1993); *Johnson v. Shalala*, 991 F.2d 126, 131 (4th Cir.1993), *cert. denied,* — U.S. ——, 115 S.Ct. 52, 130 L.Ed.2d 12 (1994); *Katradis v. Dav–El of Washington, D.C.*, 846 F.2d 1482, 1485 (D.C.Cir.1988); *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir.1986); *Goss v. Exxon Office Systems*, 747 F.2d 885, 888 (3d Cir.1984); *Held v. Gulf Oil*, 684 F.2d 427, 432 (6th Cir.1982).

 Because in partially quoting *Guthrie* the trial court stated an incorrect legal standard for determining whether there has been a constructive discharge, we are unable to determine if the court applied the appropriate law when making findings and concluding that respondents were discharged. We therefore remand this matter to the trial court for such further proceedings as it deems necessary to enable it to make appropriate findings and determinations as to whether each of the respondents was constructively discharged. Because we remand the issue of discharge, which is an integral part of respondents' prima facie case of age discrimination, we do not address the other issues raised by appellant.

## DECISION

Because the trial court stated an incorrect test for assessing a constructive discharge claim, this matter is remanded to the trial court for such further proceedings as it deems necessary to apply the appropriate standard and determine whether each of the respondents was constructively discharged.

**Reversed and remanded.**