## ALEXANDRIA HOUSING AND REDEVELOPMENT AUTHORITY, Relator,

v.

## Judith A. ROST, Respondent,

## Bureau of Mediation Services, Respondent.

## No. A07–1620.

Court of Appeals of Minnesota.

Oct. 21, 2008.

Patricia Y. Beety, League of Minnesota Cities, St. Paul, MN, for relator.

Richard T. Wylie, Minneapolis, MN, for respondent Judith A. Rost.

Lori Swanson, Attorney General, Julie A. Leppink, Assistant Attorney General, St. Paul, MN, for respondent Bureau of Mediation Services.

Scott R. Simmons, Intergovernmental Relations Manager, St. Paul, MN, for amicus curiae Association of Minnesota Counties.

Joseph E. Flynn, Jennifer K. Earley, Jeffrey E. VanOverbeke, Knutson, Flynn & Deans, P.A., Mendota Heights, MN, for amicus curiae Minnesota School Boards Association.

Considered and decided by JOHNSON, Presiding Judge; SCHELLHAS, Judge; and HUSPENI, Judge.*

## OPINION

JOHNSON, Judge.

The Alexandria Housing and Redevelopment Authority (AHRA) terminated the employment of Judith Rost, its executive director. Rost petitioned the Bureau of Mediation Services (BMS) for independent review of her termination pursuant to section 179A.25 of the Minnesota Statutes. After an evidentiary hearing, a BMS-approved arbitrator ordered AHRA to reinstate Rost with back pay. AHRA challenges BMS's statutory authority to review the termination as well as the merits of the arbitrator's decision. We conclude that

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

section 179A.25 does not authorize BMS to conduct an independent review of AHRA's termination decision because Rost does not have a contractual right to not be terminated except for cause. Therefore, we reverse.

## FACTS

### A. Background

AHRA manages public housing units in the city of Alexandria, provides assistance to eligible persons who seek to own a home, and promotes other forms of community development. In March 2001, AHRA hired Judith Rost to be its executive director.

On March 5, 2004, a maintenance person brought to Rost's office a box of items that had been left in a public housing unit when a former resident vacated the unit. While conducting an inventory of the box, Rost found a bottle containing 26 pills of prescription medication. Rost called Viking Home Health, which had administered the health-care needs of the former resident, and asked what should be done with the pills. Rost was told to dispose of the pills but to make a record of the medication and the prescription number. After the telephone call, Rost commented to her administrative assistant that the pills were expensive and that "it was a shame" to dispose of the pills because they were the same type as pills that a physician had prescribed for Rost. According to Rost, she considered whether she could take possession of the pills and consume them but concluded that she needed "to check it out and see if I could do that or not." Someone then walked into her office needing assistance. Rost put the pills in her pocket before engaging that person in conversation.

When Rost was preparing to leave work at the end of the day, she remembered that she had the pills in her pocket. She put the pills in a sandwich bag and placed the bag in her desk. Rost later testified that she was aware of a law requiring AHRA to retain a former tenant's possessions for at least 60 days, and she also was aware that at least one week of that 60-day period remained. Thus, she testified, "I knew that I couldn't do anything with them at that time."

On March 8, 2004, Rost's assistant sent a letter to the board of directors of AHRA to report that Rost had taken the pills that had belonged to the former tenant. On March 12, 2004, the chairwoman of the board informed Rost that the board would hold a special meeting that afternoon to consider the assistant's report. The chairwoman told Rost that she was welcome to present her views to the board. Rost attended the special meeting and answered questions. The board concluded that Rost had "misappropriated" the pills and gave her the option of resigning or being terminated. On March 16, 2004, Rost sent a letter to the board requesting reinstatement. On March 17, 2004, at a second special meeting, the board denied Rost's request. Rost chose to resign, effective March 19, 2004.

### B. Procedural History

On May 25, 2004, Rost filed a petition with BMS seeking an independent review of AHRA's termination of her employment. She alleged that AHRA violated certain provisions of its employment handbook, which she alleged "limit discharge to enumerated reasons—'for cause.'" AHRA requested that BMS dismiss the petition, arguing that BMS lacked jurisdiction because the sole means of review of the termination is a petition for writ of certiorari filed with this court. In June 2004, BMS issued an order denying AHRA's request for dismissal and direct-

ing the parties to select a hearing officer for binding arbitration. In July 2004, AHRA made a second request that BMS dismiss the petition, arguing that Rost was an at-will employee with no "terms and conditions of employment" subject to review. In August 2004, BMS issued an order denying AHRA's second request for dismissal on the ground that AHRA failed to raise the issue whether Rost was an at-will employee in its initial response to the petition, but BMS made clear that AHRA could present the issue to the BMS-approved arbitrator along with the merits of the matter.

In October 2004, AHRA commenced an action in the Ramsey County District Court, seeking a declaratory judgment that Minn.Stat. § 179A.25 is unconstitutional as applied to this case. In November 2005, the district court granted the motion of BMS and Rost to dismiss the complaint, holding that it lacked jurisdiction to determine the constitutionality of Minn.Stat. § 179A.25. In October 2006, this court affirmed the district court's decision, holding that AHRA may seek review in this court only by a writ of certiorari following a final decision by BMS. *Alexandria Hous. & Redev. Auth. v. Bureau of Mediation Servs.*, No. A06–75, 2006 WL 2865496 (Minn.App. Oct. 10, 2006), *review denied* (Minn. Dec. 12, 2006).

The independent review process then went forward. On June 6, 2007, a BMS-approved arbitrator conducted an evidentiary hearing. On July 23, 2007, the arbitrator issued a 21–page decision in which he found that Rost did not "steal" the pills and did not violate any policy, regulation, or statute. Thus, the arbitrator concluded that the termination should be reversed and that Rost should be reinstated, with back pay and benefits.

On August 24, 2007, AHRA filed a petition for writ of certiorari with this court.

AHRA makes numerous arguments. First, AHRA argues that, because of the constitutional doctrine of separation of powers, Rost's sole means of challenging AHRA's decision to terminate her employment is a petition for writ of certiorari to this court pursuant to Minn.Stat. § 606.01. Second, AHRA argues that BMS does not have statutory authority to conduct an independent review because Rost was an at-will employee and, therefore, did not have "terms and conditions" of employment, as required by Minn.Stat. § 179A.25. Third, AHRA argues that BMS acted beyond its statutory authority when it ordered binding arbitration instead of some non-binding form of review. Fourth, AHRA argues that de novo review by BMS is inappropriate because it exceeds the more deferential review that would be applicable upon a petition for writ of certiorari. Fifth, AHRA argues that the arbitrator's conclusion that AHRA wrongfully discharged Rost was erroneous on the merits. And sixth, AHRA argues that the arbitrator exceeded BMS's statutory authority by ordering a remedy that includes back pay, benefits, and other relief. Because this appeal can be resolved on the basis of the second issue raised by AHRA, we need not address the other arguments.

## ISSUE

Does Rost have a right under Minn.Stat. § 179A.25 to an independent review by BMS of AHRA's termination of her employment?

## ANALYSIS

■ AHRA contends that BMS erred by determining that it has statutory authority to conduct an independent review of AHRA's decision to terminate Rost's employment. The interpretation of a statute presents a question of law, which we review de novo. *A & H Vending Co. v.*

*Commissioner of Revenue,* 608 N.W.2d 544, 547 (Minn.2000). In considering questions of statutory interpretation upon review of an agency decision, "reviewing courts are not bound by the decision of the agency and need not defer to agency expertise." *St. Otto's Home v. Minnesota Dep't of Human Servs.,* 437 N.W.2d 35, 39–40 (Minn.1989).

## A. Independent Review Statute

■ The statute at issue in this case, section 179A.25, is part of the Minnesota Public Employment Labor Relations Act (PELRA). The statute provides:

> It is the public policy of the state of Minnesota that every public employee should be provided with the right of independent review, by a disinterested person or agency, of any grievance arising out of the interpretation of or adherence to terms and conditions of employment. When such review is not provided under statutory, charter, or ordinance provisions for a civil service or merit system, the governmental agency may provide for such review consistent with the provisions of law or charter. If no other procedure exists for the independent review of such grievances, the employee may present the grievance to the commissioner under procedures established by the commissioner.

Minn.Stat. § 179A.25 (2006). The term "commissioner" refers to the commissioner of BMS. Minn.Stat. § 179A.03, subd. 5 (2006).

It is undisputed that Rost is a "public employee," as defined by PELRA. *See* Minn.Stat. § 179A.03, subd. 14 (2006). It also is undisputed that there are no means of review for Rost "under statutory, charter, or ordinance provisions for a civil ser-

vice or merit system" and that AHRA did not otherwise "provide for such review," as contemplated by the second sentence of section 179A.25. Thus, Rost filed a petition for independent review pursuant to the third sentence of section 179A.25. AHRA, however, challenges the premise that Rost has a right to the independent review described in the third sentence because, it contends, Rost has not asserted a "grievance arising out of the interpretation of or adherence to terms and conditions of employment," as specified by the first sentence of section 179A.25. Thus, the issue to be decided is whether Rost's grievance is one that is based on "terms and conditions of employment," as that term is used in the first sentence of section 179A.25.

This question was presented to the supreme court on one prior occasion. In *Boe v. Polk County Library Bd.,* 299 Minn. 226, 217 N.W.2d 208 (1974), the supreme court considered the terminations of two library employees. The court held that the employees were not entitled to independent review by the commissioner because they did not have contracts defining the terms and conditions of their employment. *Id.* at 227, 217 N.W.2d at 210. The supreme court reasoned that the question whether the employees were entitled to independent review depended on "the nature of their contract of employment." *Id.* at 227, 217 N.W.2d at 209. More specifically, the supreme court held that " '[u]nless plaintiff can establish that she was to be dismissed *only for cause* by proving a contract to that effect, her employment could be terminated at any time and without cause.' " *Id.* at 227, 217 N.W.2d at 209–10 (emphasis added) (quoting *Cederstrand v. Lutheran Bhd.,* 263 Minn. 520, 117 N.W.2d 213 (1962)).[1]

---

**1.** The brief *amicus curiae* of the Minnesota School Boards Association cites PELRA's statutory definition of "terms and conditions of employment," which, in relevant part, defines

■ Unless otherwise agreed, an employment relationship is presumed to be "at will," which means that employment exists for an indefinite term and that both the employer and the employee remain free to terminate the relationship at any time and for any lawful reason. *Hunt v. IBM Mid Am. Employees Fed. Credit Union*, 384 N.W.2d 853, 856 (Minn.1986); *Cederstrand*, 263 Minn. at 532, 117 N.W.2d at 221. It is undisputed that Rost is not subject to a collective bargaining agreement. Rost did receive an offer letter prior to her employment at AHRA. That letter established her starting salary, her fringe benefits, and a one-year "orientation period." But the offer letter contains no provisions concerning the termination of Rost's employment. In the petition for independent review that she filed with BMS, Rost did not allege a violation of any of the terms of her offer letter but, rather, alleged only violations of AHRA's employment handbook. Thus, Rost is situated like the two employees in *Boe* in that she does not have a contractual right based on an express contract to not be terminated except for cause.

At the time of the *Boe* opinion, it was understood that a contract of employment could be formed only by an express agreement between the employer and the employee, either in a collective bargaining agreement or in an agreement relating only to a single employee. *See Cederstrand*, 263 Minn. at 532–33, 117 N.W.2d at 221. After *Boe*, the supreme court recognized that a contract of employment also may, in certain circumstances, be implied from provisions in an employer's policy manual or personnel handbook. *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn.1983). Although *Pine River* had not yet been decided at the time that *Boe* was decided, the two opinions speak of the same concepts. In *Boe*, the supreme court held that the question whether an employee is entitled to independent review under PELRA depends on "the nature of [his or her] contract of employment." 299 Minn. at 227, 217 N.W.2d at 209. In *Pine River*, the supreme court held that "personnel handbook provisions, if they meet the requirements for formation of a unilateral contract, may become enforceable as part of the original employment contract." 333 N.W.2d at 627.

■ It is plain that the *Pine River* opinion supplies a means of defining an employment relationship in a way that was found to be lacking in the *Boe* case. Accordingly, to resolve Rost's argument that she has a contractual right to not be termi-

the phrase to mean "the hours of employment, the compensation therefor including fringe benefits except retirement contributions or benefits other than employer payment of, or contributions to, premiums for group insurance coverage of retired employees or severance pay, and the employer's personnel policies affecting the working conditions of the employees." Minn.Stat. § 179A.03, subd. 19 (2006). The text of this statutory definition, by itself, raises the question whether, in the PELRA context, the phrase "terms and conditions of employment" refers only to the benefits enjoyed by public-sector employees while employed but not to limitations on the employer's freedom to terminate the employment relationship. The caselaw, however, appears to say that the statutory definition is broad enough to encompass the termination of employment. *See General Drivers, Local No. 346 v. Aitkin County Bd.*, 320 N.W.2d 695, 706–07 (Minn.1982) (holding that "complete discharge from employment without cause" is term or condition of employment subject to mandatory arbitration). In any event, *Boe* did not rely on, or even cite, the statutory definition, which, at the time of the *Boe* decision, was fairly similar to the present statutory definition. *See* Minn.Stat. § 179.63, subd. 18 (1971); *see also* 1973 Minn. Laws ch. 635, § 6, at 1527. Because the statutory definition was not part of the analysis in *Boe*, we do not analyze it here.

nated except for cause, as necessary under *Boe,* and thus whether she is entitled to independent review under section 179A.25, it is proper to conduct a unilateral-contract analysis of the type prescribed by *Pine River* and its progeny. If Rost has such a contractual right, she is entitled to independent review by the commissioner to determine whether AHRA breached that contractual right. If Rost does not have such a contractual right, she is not entitled to independent review. Rost may rely on an employment handbook to establish contractual rights even though she received an offer letter because an employment handbook may be used to modify or supplement pre-existing contractual rights. *Pine River,* 333 N.W.2d at 627.

## B. Unilateral Contract Analysis

As stated above, a unilateral contract of employment may be based on provisions in an employer's personnel handbook. *Pine River,* 333 N.W.2d at 627. "[A]n employee handbook may constitute terms of an employment contract if (1) the terms are definite in form; (2) the terms are communicated to the employee; (3) the offer is accepted by the employee; and (4) consideration is given." *Feges v. Perkins Restaurants, Inc.,* 483 N.W.2d 701, 707 (Minn.1992). "Whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions." *Pine River,* 333 N.W.2d at 626. Whether an employment handbook creates a contract is a question of law, which this court reviews de novo. *Martens v. Minnesota Mining & Mfg. Co.,* 616 N.W.2d 732, 740 (Minn.2000); *Campbell v. Leaseway Customized Transp., Inc.,* 484 N.W.2d 41, 43 (Minn.App.1992).

In this case, the parties' arguments are focused on the first element articulated by *Feges,* whether the purported terms of Rost's contractual rights are definite in form.

### 1. Definiteness of Handbook Terms

Provisions in a handbook must be "sufficiently definite" to form the basis for an enforceable unilateral contract of employment. *Hunt,* 384 N.W.2d at 856; *Pine River,* 333 N.W.2d at 626; *see also Lee v. Fresenius Med. Care, Inc.,* 741 N.W.2d 117, 123 (Minn.2007). To satisfy this standard, the handbook language must be definite enough "for a court to discern with specificity what the provision requires of the employer so that if the employer's conduct in terminating the employee or making other decisions affecting the employment is challenged, it can be determined if there has been a breach." *Martens,* 616 N.W.2d at 742. "[T]he resolution of whether the language used rises to the level of a contract is for the court." *Hunt,* 384 N.W.2d at 856.

Rost relies on several excerpts from the AHRA handbook. She appears to rely most heavily on a provision on page 19 of the handbook, which states, "An employee who gives unsatisfactory service or who is guilty of substantial violation of regulations shall be subject to dismissal without notice." Rost argues that this handbook language confers on her a contractual right to not be terminated unless, first, she has "give[n] unsatisfactory service" or, second, she "is guilty of substantial violation of regulations."

We begin by noting that several of the key terms on page 19 are unclear and are not defined by the handbook. The word "unsatisfactory" in the first clause is inherently vague. The same is true of the word "substantial" in the second clause. Most unclear is the reference to "regulations" in the second clause. There are no regulations found elsewhere in the handbook, and it is unclear whether the regulations at

issue were adopted by AHRA or by some external entity.

The handbook language on which Rost relies is very similar to the handbook language in *Hunt,* which stated, "In the event of a serious offense, an employee will be terminated immediately." 384 N.W.2d at 857. The supreme court reasoned that the vagueness of that language fell "far short of the specificity necessary for a contractual offer under principles enunciated in *Pine River." Id.* The AHRA handbook language also is similar to the handbook language in *Ward v. Employee Devel. Corp.,* 516 N.W.2d 198 (Minn.App.1994), *review denied* (Minn. July 8, 1994), where the handbook stated that an employee would be "dismissed immediately" if he or she "performs any act which is determined detrimental to the ethical and/or quality standards established by EDC." *Id.* at 200. This court held, as a matter of law, that the handbook language was insufficiently definite to create a for-cause requirement, reasoning that the language "does not qualify [the employer's] right to discharge an employee [or] evidence an intent to restrict that right." *Id.* at 203. The *Ward* court concluded by stating, "The absence of definition makes the language too vague for a jury to determine what conduct was prohibited in determining whether a breach occurred." *Id.*

Here, the language used simply is not definite enough "for a court to discern with specificity what the provision requires of the employer so that ... it can be determined if there has been a breach." *Martens,* 616 N.W.2d at 742. There is no "standard sufficiently definite to determine to what [Rost is] entitled." *Id.* at 744. Thus, neither clause of the handbook language on page 19 is sufficiently definite.

█ Rost also cites other provisions of the handbook that describe certain procedures that may be applicable in cases of discipline and termination. She cites another provision on page 19 stating that, in cases of termination, an employee, "if he/she desires, shall be given a hearing before [AHRA's] Board of Commissioners." She also cites several provisions on pages 18 to 20 that, she asserts, set forth a system of progressive discipline, which she contends AHRA did not follow. We need not examine whether these provisions are sufficiently definite because the purported rights they describe are procedural in nature, not substantive. *Compare Pine River,* 333 N.W.2d at 626, 631 (holding that employee had right to three-step disciplinary procedure) *with Ward,* 516 N.W.2d at 203 (analyzing employee's claim that she could be terminated only for specific types of misconduct). Because the contractual rights purportedly arising from pages 18 to 20 are procedural in nature, they are not the type of contractual rights that *Boe* requires for independent review under section 179A.25. *See Boe,* 299 Minn. at 227, 217 N.W.2d at 209–10 (holding that plaintiff has no "terms and conditions of employment," as required by statute, "[u]nless [she] can establish that she was to be dismissed only for cause by proving a contract to that effect").

█ Rost also relies on other provisions of the AHRA handbook that contain more general statements. She cites an excerpt from page 5 that states, "The employment of personnel and all actions affecting the employees of the [AHRA] shall be based solely on merit, ability and justice." This provision, however, is nothing more than a "general statement of policy," which "do[es] not meet the contractual requirements for an offer." *Pine River,* 333 N.W.2d at 626. Rost also cites an excerpt from page 8 that states, "It shall be customary for the Executive Director's position to be considered probationary for the first (1st) year of employment unless noted

in the official hiring process." Rost contends that this provision "implies" that an at-will standard applied during the first year of her employment but that "something different" applies thereafter. But the handbook itself does not prescribe any standard that would apply after the first year of employment. These general statements are "meaningless" because they do not set forth "standards that would provide a basis for determining if a breach has occurred." *Martens,* 616 N.W.2d at 744.

Thus, the provisions of the AHRA employment handbook on which Rost relies are not "sufficiently definite" to establish an enforceable contractual right to not be terminated except for cause.

### 2. *Disclaimer*

■ Even if the language cited by Rost were sufficiently definite, other language in the handbook demonstrates that AHRA did not intend to create an enforceable contract. A disclaimer in an employment handbook that clearly expresses an employer's intent to retain the at-will nature of the employment relationship will prevent the formation of a contractual right to continued employment. *Michaelson v. Minnesota Mining & Mfg. Co.,* 474 N.W.2d 174, 180 (Minn.App.1991) (holding that disclaimer in handbook was "valid expression of [employer's] intentions"), *aff'd mem.,* 479 N.W.2d 58 (Minn.1992); *Audette v. Northeast State Bank,* 436 N.W.2d 125, 127 (Minn.App.1989) (holding that language stating that handbook "is not intended to create a contract" was "understandable" and enforceable); *see also Kulkay v. Allied Cent. Stores, Inc.,* 398 N.W.2d 573, 578 (Minn.App.1986) (noting absence of "limiting language" in employment policy to indicate that policy "did not constitute an offer of an employment contract" and "did not alter the status of at-

will employees"), *review denied* (Minn. Feb. 13, 1987).

AHRA's handbook, at page 7, states, "The [AHRA] shall consider all employees to be 'employed at will'. There shall be no employment contracts with any employee." This language clearly expresses AHRA's intent to not enter into a contractual relationship with any employee based on its handbook and clearly expresses AHRA's intent to retain at-will employment relationships with its employees. *See Michaelson,* 474 N.W.2d at 180; *Audette,* 436 N.W.2d at 127. This conclusion is consistent with *Feges,* in which the supreme court considered whether a disclaimer in an employment handbook applied to employees who had received a prior handbook that did *not* contain a disclaimer. The court held that the disclaimer was ineffective with respect to pre-existing employees but stated, in dicta, that such a disclaimer "presumably precludes employees hired after its distribution from claiming contractual rights under the Handbook." 483 N.W.2d at 708.

■ Rost contends that the disclaimer is ineffective because it is located on page 7 of the 26–page handbook and, therefore, is not sufficiently conspicuous. In *Audette,* this court considered a disclaimer that was printed on the eleventh page of a handbook. The court noted that an employer should "call attention" to handbook disclaimers "by bold print or other emphasis." The court, however, did not invalidate the disclaimer. 436 N.W.2d at 127. The disclaimer language in the AHRA handbook is no less conspicuous than the language on which Rost affirmatively relies for her purported contractual right to not be terminated. In light of our review of the handbook as a whole and the lack of authority supporting Rost's argument, we conclude that the AHRA disclaimer is not

ineffective due to its manner of presentation.

 Rost also contends that the handbook disclaimer is ineffective because she did not receive a copy of the handbook until approximately three or four months after she was hired. If an employer makes an offer of a unilateral contract by disseminating a new or revised handbook, an employee may accept the offer by remaining in employment. *Pine River*, 333 N.W.2d at 627; *Brookshaw v. South St. Paul Feed, Inc.*, 381 N.W.2d 33, 36 (Minn. App.1986), *review denied* (Minn. Apr. 11, 1986). If Rost were successful in her argument that the disclaimer does not apply to her, however, she would undermine her claims because, in that event, she could not rely on the provisions of the handbook that she contends confer contractual rights on her. Rost's situation is unlike that of the plaintiff in *Feges*, in which there were successive handbooks, thus allowing the plaintiff to gain the benefits of the first while avoiding the disclaimer in the second. *See Feges*, 483 N.W.2d at 708. Because only one handbook is at issue, Rost cannot have it both ways. The only reasonable conclusion in light of the evidence is that Rost accepted AHRA's offer of a unilateral employment contract by remaining in her position after AHRA disseminated the handbook on which both parties rely. *See Pine River*, 333 N.W.2d at 627; *Brookshaw*, 381 N.W.2d at 36.

Thus, even if the handbook language on which Rost relies were sufficiently definite to allow the formation of an enforceable unilateral contract, the disclaimer in the AHRA handbook would negate such intent. Therefore, the AHRA handbook does not create an enforceable unilateral contract by which Rost can seek to enforce a contractual right to continued employment.

## DECISION

Rost does not have "terms and conditions of employment," as that term is used in Minn.Stat. § 179A.25, because she does not have an enforceable contractual right to not be terminated except for cause. Thus, the BMS-approved arbitrator erred by ruling that AHRA's termination of Rost is subject to independent review by the commissioner of BMS pursuant to section 179A.25.

**Reversed.**