John O. COURSOLLE, Appellant,

v.

EMC INSURANCE GROUP, INC.,
an Iowa corporation, et al.,
Respondents.

No. A10–1036.

Court of Appeals of Minnesota.

Feb. 8, 2011.

Philip G. Villaume, Jeffrey D. Schiek, Villaume & Schiek, P.A., Bloomington, MN, for appellant.

V. John Ella, Sara Sidwell, Jackson Lewis LLP, Minneapolis, MN, for respondents.

Considered and decided by JOHNSON, Chief Judge; KLAPHAKE, Judge; and HARTEN, Judge.*

## OPINION

JOHNSON, Chief Judge.

John Coursolle quit his job as a senior claims adjustor at Employers Mutual Casualty Company. He sued his former employer, alleging numerous causes of action. The district court granted the former employer's motion for summary judgment on Coursolle's claims of a violation of the Minnesota Whistleblower Act and breach of contract. We conclude that the district court properly granted summary judgment on the whistleblower claim because, as a matter of law, Coursolle did not engage in conduct protected by the whistleblower act. We further conclude that the district court properly granted summary judgment on the breach-of-contract claim because, as a matter of law, the employee handbook disclaimed an enforceable contract. Therefore, we affirm.

## FACTS

Employers Mutual Casualty Company is an Iowa-based company engaged in the business of property and casualty insurance. EMC Insurance Group Inc. is a wholly owned subsidiary of Employers Mutual Casualty Company and maintains an office in the city of Minnetonka. For purposes of this opinion, we refer to the two companies collectively as EMC.

We recite the relevant facts in the light most favorable to Coursolle, who was the non-moving party in the district court.[1]

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. It is appropriate to describe the record on which our factual recitation is based. The district court issued a stipulated protective order that permitted the parties to file evidentiary materials with the district court under seal. Some evidentiary materials in the summary judgment record were filed with the district court under seal, including excerpts from the transcripts of seven depositions, nine other exhibits, and Coursolle's memorandum in opposition to EMC's motion for summary judgment. On appeal, Coursolle filed a two-volume appendix that includes most of the evidentiary materials in the summary judgment record. Because evidentiary materials in Coursolle's confidential appendix remain under seal in the district court, Coursolle was required to file his appendix under seal in this court, without the need to seek leave of court. See Minn. R. Civ.App. P. 112.01, subd. 1; see also Minn. R. Civ.App. P. 112.03. In this opinion, we do not disclose information that was properly filed under seal with this court and is not otherwise a matter of public record. See Minn. R. Civ.App. P. 112.01, subd. 1; Minn. R. Pub. Access to Recs. of Jud. Branch 4, subd. 1(g)(2). We note that confidential materials should be segregated from non-confidential materials and should be separately bound. Minn. R. Civ.App. P. 112.02.

Coursolle also attempted to file his principal appellate brief under seal. The cover of the brief states, "Filed Under Seal," and it was delivered to the Clerk of the Appellate Courts in a sealed envelope. But Coursolle elected to not file an accompanying motion seeking leave to file a redacted version of the brief under seal. EMC also did not file such a motion. In the appellate courts, each brief must be accessible to the public in some form. A party wishing to protect confidential information may seek leave to file both a redacted version that is accessible to the public and a full version that is under seal, and the court will grant such leave if "the inability to discuss confidential information" in the brief "would cause substantial hardship or prevent the fair presentation of a party's argument." Minn. R. Civ.App. P. 112.03, advisory comm. cmt. Because both parties' briefs are not under seal, we are not constrained in disclosing information contained in the briefs. See Minn. R. Pub. Access to Recs. of Jud. Branch 4.

Accordingly, the facts stated in this opinion are limited to the facts stated in the parties' briefs and other documents in the record that are not under seal. We have, of course, reviewed the evidentiary materials contained in

Coursolle began working for EMC in April 2000 as a claims adjustor in its Minnetonka office. He received a copy of EMC's employee handbook on his first day of work. He signed an "Employee Handbook Receipt" that same day.

In the summer of 2006, the claims manager in the Minnetonka office retired and was replaced by Michael Huttner. Coursolle reported directly to Huttner. In November 2006, an EMC employee in the Minnetonka office filed a written complaint with EMC's human resources department, alleging that Huttner had harassed her and intimidated her. Lisa Scaglione, an employee-relations consultant in EMC's Iowa office, investigated the complaint by conducting telephone interviews of EMC employees who reported to Huttner. When Scaglione spoke with Coursolle, she asked him questions about Huttner. Coursolle told Scaglione that he believed that Huttner was not a fair manager. Coursolle informed Scaglione that, since Huttner became claims manager, his co-workers were afraid of making mistakes and being reprimanded. He stated, "Everyone looks over their shoulder-they are scared to death." Coursolle responded "yes" when Scaglione asked him whether he considered Huttner to be "intimidating."

Coursolle contends that Huttner retaliated against him because he spoke with Scaglione. He stated in his brief that "threats were made," "folders were shaken," and "statements were made." Coursolle alleged that he "experienced harassment, discrimination, intimidation, retaliation, mental anguish, emotional distress, and daily ongoing abuse" from Huttner. In March 2007, Coursolle quit

his job after giving EMC two weeks' notice.

In February 2009, Coursolle commenced this action in the Hennepin County District Court. In his complaint, he alleged seven employment-related claims. In March 2009, EMC moved to dismiss Coursolle's claims. In September 2009, the district court granted EMC's motion in part and dismissed four of Coursolle's claims.

In October 2009, EMC moved for summary judgment on Coursolle's remaining claims of a violation of the Minnesota Whistleblower Act, tortious interference with contract, and breach of contract. In April 2010, the district court granted the motion for summary judgment. The district court concluded that Coursolle had not created a genuine issue of material fact on his whistleblower claim because he did not identify any law that EMC violated or was suspected of violating. The district court concluded that Coursolle had not created a genuine issue of material fact on his breach-of-contract claim because Coursolle did not prove that he entered into an enforceable contract with EMC. The district court also reasoned that EMC was entitled to summary judgment on Coursolle's allegation of a constructive discharge because Coursolle did not show intolerable working conditions, illegal discrimination, or evidence that EMC intended to force him to quit. Coursolle appeals from the district court's entry of summary judgment.

**ISSUES**

I. Did the district court err by granting EMC's motion for summary judgment on Coursolle's whistleblower claim?

Coursolle's confidential appendix to ensure that the parties' briefs have accurately stated the facts. And we have fully considered all evidentiary materials in Coursolle's confidential appendix when analyzing the parties' respective arguments and deciding the issues raised in the appeal.

II. Did the district court err by granting EMC's motion for summary judgment on Coursolle's breach-of-contract claim?

III. Did the district court err in its analysis of Coursolle's allegations of constructive discharge?

## ANALYSIS

Coursolle raises three issues on appeal, each of which relates to the district court's grant of summary judgment. A district court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the non-moving party. *Frieler v. Carlson Mktg. Group, Inc.*, 751 N.W.2d 558, 564 (Minn.2008). We apply a *de novo* standard of review to a grant of summary judgment, and we view the evidence in the light most favorable to the non-moving party. *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 371 (Minn. 2008).

### I.

■ Coursolle first argues that the district court erred by granting summary judgment to EMC on his claim that EMC violated the Minnesota Whistleblower Act, Minn.Stat. § 181.932 (2010). More specifically, Coursolle argues that a genuine issue of material fact exists as to whether he engaged in conduct that is protected by the whistleblower act because he cooperated with Scaglione's investigation.

■ The Minnesota Whistleblower Act prohibits an employer from discharging an employee because the employee engaged in conduct that is protected by the act. The statute states, in relevant part:

An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1) the employee, or a person acting on behalf of an employee, in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official; [or]

(2) the employee is requested by a public body or office to participate in an investigation, hearing, inquiry[.]

*Id.*, subd. 1. To establish liability under the whistleblower act, an employee must prove three elements: "[1] statutorily protected conduct by the employee, [2] an adverse employment action by the employer, and [3] a causal connection between the two." *Gee v. Minnesota State Colls. & Univs.*, 700 N.W.2d 548, 555 (Minn.App.2005); *see also Kidwell v. Sybaritic, Inc.*, 784 N.W.2d 220, 226–27 (Minn.2010) (plurality opinion); *Kratzer v. Welsh Cos., LLC*, 771 N.W.2d 14, 18–19 (Minn.2009).

The district court concluded that Coursolle did not create a genuine issue of material fact because he did not produce evidence that he reported a violation or suspected violation of law to EMC. The district court reasoned that Coursolle spoke only with Scaglione, "merely 'answered her questions,'" and did not tell Scaglione that Huttner was engaging in unlawful conduct. On appeal, Coursolle does not challenge this aspect of the district court's reasoning. In fact, Coursolle's brief does not focus on the content of what he said to Scaglione or whether his statements constitute a report of "a violation or suspected violation of any federal or state

law." Minn.Stat. § 181.932, subd. 1(1). Rather, Coursolle contends that he engaged in conduct protected by the whistleblower act simply because he participated in EMC's investigation of another employee's complaint against Huttner. Coursolle reasons that he engaged in protected conduct because the other employee filed a good-faith complaint of a violation of law and because he provided information that tended to corroborate her complaint.

■ Coursolle relies on paragraphs (1) and (2) of section 181.932, subdivision 1, which are quoted above. Neither of those paragraphs supports Coursolle's argument. The plain language of paragraph (1) requires evidence that "the employee, or a person acting on behalf of an employee," made a report of "a violation or suspected violation of any federal or state law." *Id.* Coursolle essentially concedes that he did not make such a report, and he does not contend that any other employee made a report on his behalf. In fact, the evidentiary record makes clear that the employee who prompted EMC's investigation made a report on her own behalf and that Coursolle merely provided information that may have corroborated her complaint. Coursolle does not take issue with the district court's determination that he did not communicate facts to Scaglione that would state a violation or suspected violation of law. *See Kratzer,* 771 N.W.2d at 19; *Abraham v. County of Hennepin,* 639 N.W.2d 342, 354–55 (Minn.2002). Once again, Coursolle's argument is that his cooperation with and participation in the company's investigation of the other employee's complaint is protected conduct. But mere participation in an employer's internal investigation of another employee's complaint is not protected by paragraph (1) of section 181.932, subdivision 1.

Coursolle's argument also fails under paragraph (2) of section 181.932, subdivision 1. That paragraph confers protection on employees who participate in some investigations but not investigations conducted by an employer. The plain language of the statute protects an employee who is "requested *by a public body or office* to participate in an investigation, hearing, inquiry." Minn.Stat. § 181.932, subd. 1(2) (emphasis added). Coursolle has not introduced any evidence that he was asked to participate in any investigation other than the investigation conducted by Scaglione. By its plain language, paragraph (2) does not protect an employee who is requested by his or her employer to participate in the employer's internal investigation. Furthermore, no other paragraph of section 181.932, subdivision 1, applies.

Coursolle urges this court to apply *Crawford v. Metropolitan Gov't of Nashville & Davidson Cnty.,* 555 U.S. 271, 129 S.Ct. 846, 172 L.Ed.2d 650 (2009). On facts that are similar to the facts of this case, the United States Supreme Court held in *Crawford* that a federal statute protected an employee who participated in an employer's internal investigation concerning a fellow employee's complaint of discrimination. 129 S.Ct. at 849, 852–53. The *Crawford* case arose under the antiretaliation provision of Title VII of the Civil Rights Act of 1964, which prohibits discrimination against an employee because, among other reasons, he or she has "testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a) (2006). That language is significantly different from the relevant language of the whistleblower act, so much so that *Crawford* simply does not shed any light on the proper interpretation of section 181.932, subdivision 1.[2] Thus, Cour-

---

2. The Minnesota Human Rights Act (MHRA) contains a provision that closely resembles

solle cannot rely on the Supreme Court's opinion in *Crawford.*

In sum, the district court correctly concluded that Coursolle did not create a genuine issue of material fact as to whether he engaged in conduct that is protected by the whistleblower act. Accordingly, the district court did not err by granting summary judgment to EMC on Coursolle's whistleblower claim.

## II.

■ Coursolle next argues that the district court erred by granting summary judgment to EMC on his breach-of-contract claim. Coursolle relies on a provision of the EMC employee handbook that states that "the company will not knowingly permit any retaliation against any employee who complains of prohibited harassment or who participates in an investigation." Coursolle contends that the handbook is an enforceable contract and that EMC breached the contract by failing to provide him with a workplace free from retaliation.

■ An employee handbook sometimes gives rise to an enforceable contract of employment. *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 627 (Minn.1983). "[A]n employee handbook may constitute terms of an employment contract if (1) the terms are definite in form; (2) the terms are communicated to the employee; (3) the offer is accepted by the employee; and (4) consideration is given." *Feges v. Perkins Restaurants, Inc.,* 483 N.W.2d 701, 707 (Minn.1992). "Whether a proposal is meant to be an offer for a unilateral con-

tract is determined by the outward manifestations of the parties, not by their subjective intentions." *Pine River,* 333 N.W.2d at 626.

■ Even if the language of an employee handbook satisfies the four requirements of *Feges,* other language in the handbook may preclude the formation of an enforceable contract. *Alexandria Hous. & Redev. Auth. v. Rost,* 756 N.W.2d 896, 906 (Minn.App.2008). "A disclaimer in an employment handbook that clearly expresses an employer's intent to retain the at-will nature of the employment relationship will prevent the formation of a contractual right to continued employment." *Id.; see also Michaelson v. Minnesota Mining & Mfg. Co.,* 474 N.W.2d 174, 180 (Minn.App.1991), *aff'd mem.,* 479 N.W.2d 58 (Minn.1992); *Audette v. Northeast State Bank,* 436 N.W.2d 125, 127 (Minn.App. 1989).

The district court granted summary judgment to EMC because two provisions of the handbook "disclaimed an intention to form an employment contract." Both provisions appear under the heading, "Employee Handbook Disclaimer." The first provision states, "This handbook is a guide for your general background and knowledge only. It does not constitute a contract." The second provision states, "[T]his handbook is not intended to become expressly or implicitly a part of any agreement or contract of employment. The statements contained in this handbook do not limit the right of either the company or the employee to terminate employment at any time with or without cause."

the federal statute at issue in *Crawford.* That provision prohibits an employer from "intentionally engag[ing] in any reprisal against any person because that person ... opposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, pro-

ceeding, or hearing under this chapter." Minn.Stat. § 363A.15(1) (2010); *see also Bahr v. Capella Univ.,* 788 N.W.2d 76, 81 (Minn. 2010) (interpreting section 363A.15 and citing 42 U.S.C. § 2000e–3(a) (2006)). But Coursolle did not allege a claim under the MHRA.

The disclaimer language in the EMC employee handbook clearly and definitely states that the handbook is not a contract. The disclaimer language is substantially similar to disclaimer language in other cases in which this court has concluded that an enforceable contract did not arise. *See Roberts v. Brunswick Corp.,* 783 N.W.2d 226, 232–33 (Minn.App.2010); *Rost,* 756 N.W.2d at 906; *Michaelson,* 474 N.W.2d at 180; *Audette,* 436 N.W.2d at 127. The disclaimer in EMC's employee handbook effectively stated that EMC had no intention of entering into an enforceable contract with the company's employees, including Coursolle.

In sum, the district court correctly concluded that Coursolle did not create a genuine issue of material fact as to whether the EMC employee handbook created enforceable contract rights. Accordingly, the district court did not err by granting summary judgment to EMC on Coursolle's breach-of-contract claim.

### III.

■■■ Coursolle last argues that the district court erred by granting summary judgment on a claim of constructive discharge. A constructive discharge is a "resignation which is caused by illegal discrimination." *Danz v. Jones,* 263 N.W.2d 395, 403 n. 4 (Minn.1978). " 'A constructive discharge occurs when an employee resigns in order to escape intolerable working conditions caused by illegal discrimination.' " *Navarre v. South Washington Cnty. Schs.,* 652 N.W.2d 9, 32 (Minn.2002) (quoting *Continental Can Co. v. State,* 297 N.W.2d 241, 251 (Minn.1980)). To establish a constructive discharge, a plaintiff must prove that the employer's illegal discrimination created intolerable working conditions and that the employer either intended to force the employee to quit or could have reasonably foreseen

that its conduct would force the employee to quit. *Pribil v. Archdiocese of St. Paul & Minneapolis,* 533 N.W.2d 410, 412–13 (Minn.App.1995).

The constructive discharge issue in this case comes to us in an awkward posture. Coursolle's complaint alleges that EMC engaged in "illegal actions" that caused "intolerable working conditions," which made his resignation reasonably foreseeable. The complaint also alleges that EMC's actions resulted in his being "constructively discharged." In its order granting summary judgment, the district court analyzed the issue of constructive discharge as if it were an independent cause of action. On appeal, Coursolle's brief also assumes that constructive discharge is an independent cause of action.

■■■ Contrary to the premise shared by Coursolle and the district court, constructive discharge is not an independent, free-standing cause of action. Rather, constructive discharge is a doctrine that may be invoked by a plaintiff in some employment-related actions to prove that, even though the plaintiff resigned from his or her job, the defendant should be deemed to have made an adverse employment action. For example, in an employment-discrimination action brought under the MHRA, a plaintiff must prove that the defendant took an adverse employment action, such as the involuntary termination of the plaintiff's employment. *See Bahr,* 788 N.W.2d at 81; *see also Devin v. Schwan's Home Service, Inc.,* 491 F.3d 778, 789 (8th Cir.2007) (applying Title VII). If an employee voluntarily terminates his or her own employment by quitting, the employer may defend against the employee's subsequent claim by arguing that there was no adverse employment action. *See, e.g., Bersie v. Zycad Corp.,* 399 N.W.2d 141, 146 (Minn.App.1987) (applying MHRA). In that circumstance, a plaintiff may invoke

the constructive discharge doctrine to establish an adverse employment action despite his or her resignation. *See id.; Hanenburg v. Principal Mut. Life Ins. Co.,* 118 F.3d 570, 574 (8th Cir.1997) (applying MHRA); *see also Smith v. Fairview Ridges Hosp.,* 625 F.3d 1076, 1087 (8th Cir.2010) (applying Title VII). A plaintiff who successfully establishes a constructive discharge may prevail on an employment-discrimination claim only if he or she can satisfy the other elements of proof.

These principles have been recognized by courts in other states. The California Supreme Court has stated that constructive discharge is "a doctrine that transforms what is ostensibly a resignation into a firing." *Turner v. Anheuser–Busch, Inc.,* 7 Cal.4th 1238, 32 Cal.Rptr.2d 223, 876 P.2d 1022, 1030 (1994). The Iowa Supreme Court has stated that "a constructive discharge is actionable only when an express discharge would be actionable in the same circumstances." *Balmer v. Hawkeye Steel,* 604 N.W.2d 639, 643 (Iowa 2000). And the Michigan Court of Appeals has explained, "[C]onstructive discharge is not itself a cause of action, although it is routinely alleged as a separate count in complaints for wrongful discharge. Rather, constructive discharge is a defense

against the argument that no suit should lie in a specific case because the plaintiff left the job voluntarily." *Vagts v. Perry Drug Stores, Inc.,* 204 Mich.App. 481, 516 N.W.2d 102, 104 (1994) (citations omitted).[3] In short, a constructive discharge, by itself, is not a claim upon which relief may be granted.

 The notion that constructive discharge is not an independent, free-standing cause of action follows naturally from the employment-at-will doctrine, which permits an employer to discharge an employee at any time for any reason that is not an unlawful reason. *See Hunt v. IBM Mid Am. Employees Fed. Credit Union,* 384 N.W.2d 853, 856 (Minn.1986); *Cederstrand v. Lutheran Bhd.,* 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962); *Rost,* 756 N.W.2d at 903. In light of the employment-at-will doctrine, an employer's constructive discharge of an employee has the same legal consequences as any other discharge of an employee, which is to say that it has no consequences with respect to liability, unless the discharge was motivated by an unlawful reason.[4] Accordingly, in *Huyen v. Driscoll,* 479 N.W.2d 76 (Minn. App.1991), *review denied* (Minn. Feb. 10, 1992), we stated that constructive dis-

3. In each of these other states, the courts looked to federal caselaw interpreting Title VII when first recognizing the constructive discharge doctrine. *See Balmer,* 604 N.W.2d at 641; *Turner,* 32 Cal.Rptr.2d 223, 876 P.2d at 1026; *LeGalley v. Bronson Cmty. Schs.,* 127 Mich.App. 482, 339 N.W.2d 223, 225 (1983). The Minnesota Supreme Court also relied on federal caselaw interpreting Title VII when first recognizing the constructive discharge doctrine. *See Danz,* 263 N.W.2d at 403 n. 4 (citing *Young v. Southwestern Savings & Loan Ass'n,* 509 F.2d 140, 143 (5th Cir.1975)). The Minnesota Supreme Court often relies on the federal Title VII caselaw when interpreting the MHRA, so long as there are no meaningful differences in the language of the two statutes. *See Ray v. Miller Meester Advertising, Inc.,* 684 N.W.2d 404, 408–09 (Minn.

2004); *Fletcher v. St. Paul Pioneer Press,* 589 N.W.2d 96, 101 (Minn.1999).

4. An employer also may incur liability by creating a hostile work environment during an employee's employment, but that is a separate doctrine, with different requirements of proof. *See Frieler,* 751 N.W.2d at 564–71. The conduct that gives rise to a hostile work environment also may establish a constructive discharge. *See Continental Can Co.,* 297 N.W.2d at 244, 251. Under Title VII, the conduct that establishes a constructive discharge also may support an award of damages for emotional distress. *See Delph v. Dr. Pepper Bottling Co.,* 130 F.3d 349, 354–58 (8th Cir. 1997).

charge is a "companion tort" and that, for the doctrine to be efficacious, the plaintiff also "must establish the underlying illegality." *Id.* at 81. Similarly, we stated in *Pribil* that constructive discharge must be accompanied by proof of intentional wrongdoing by the employer against the employee. 533 N.W.2d at 413. Our statement in *Pribil* is in harmony with supreme court opinions that consistently have stated that constructive discharge must be "caused by illegal discrimination." *Navarre*, 652 N.W.2d at 32; *Continental Can Co.*, 297 N.W.2d at 251; *Danz*, 263 N.W.2d at 403 n. 4.

As illustrated above, the constructive discharge doctrine usually is applied in cases arising under the MHRA and Title VII. Coursolle did not allege either a MHRA claim or a Title VII claim. Neither the supreme court nor this court has applied the constructive discharge doctrine to a whistleblower claim. *Cf. Donahue v. Schwegman, Lundberg, Woessner & Kluth, P.A.*, 586 N.W.2d 811, 816–17 (Minn.App.1998) (noting but not analyzing plaintiff's constructive discharge argument), *review denied* (Minn. Feb. 18, 1999), *overruled on other grounds, Anderson–Johanningmeier v. Mid–Minnesota Women's Ctr., Inc.*, 637 N.W.2d 270, 275–77 (Minn.2002). Nonetheless, even if we assume without deciding that the constructive discharge doctrine applies to a whistleblower claim, the doctrine would not allow Coursolle to establish a whistleblower claim. The district court rejected Coursolle's whistleblower claim on the ground that he did not engage in protected conduct. We have upheld that rationale. Accordingly, it is unnecessary for this court to analyze whether EMC constructively discharged Coursolle.

## DECISION

The district court properly granted EMC's motion for summary judgment on

Coursolle's claim that EMC violated the Minnesota Whistleblower Act because Coursolle did not engage in conduct that is protected by the whistleblower act. The district court properly granted EMC's motion for summary judgment on Coursolle's claim that EMC breached an employment contract because the EMC employee handbook did not create enforceable contract rights. We need not determine whether EMC constructively discharged Coursolle.

**Affirmed.**